[No. 705.   August 6, 1897.]

## RATON WATERWORKS COMPANY, Appellee, v. TOWN OF RATON, Appellant.

MUNICIPAL CORPORATIONS—CONTRACT—SPECIAL TAX LEVY—STATUTORY CONSTRUCTION.—Held: That paragraph 71, section 1622, Comp. Laws, 1884, providing that the special tax therein authorized for the payment of water rents, shall not exceed the sum of two mills on the dollar for any one year, is a limitation on the sum to be paid therefor by special tax, and an inhibition on the trustees of the town of Raton from paying any more than the sum derived from a two-mill levy on the dollar upon the property subject to taxation within its corporate limits.

ID.—STATUTORY CONSTRUCTION.—Nor is the effect of paragraph 71, supra, changed by paragraphs 2, 3, 6, section 1622, Comp. Laws 1884, authorizing and directing the town of Raton and all similar municipal corporations to assess and levy taxes for general and special purposes, and when collected to be applied "only" to the purposes in the ordinance "No. 10" specified.

ID.—STATUTES—NOTICE—ESTOPPEL.—The statutes are a public notice of their contents, and a complainant contracting presumably with a knowledge that defendant was limited, by the statute creating it, to a two-mill levy for the discharge of its obligation, will not be heard to complain that the trustees of defendant refused to transcend that power.

ID.—STATUTORY CONSTRUCTION.—The power to make the contract in question, and to execute the proprietary grant and business portion of a quasi public nature, did not carry with it the power to depart from the mode prescribed by the statute for raising revenues with which to pay for the supply of water so contracted to be furnished.

ID.—CONTRACT—SPECIFIC PERFORMANCE—JURISDICTION.—While a court of equity, in an action against a town for the specific performance of a contract for the payment of water rents, may declare the validity of the contract, it has no jurisdiction to compel the town to make a levy, the remedy in such case being by mandamus.

ID.—CONTRACT—CONSTRUCTION.—The contract of a town to pay more than it has the power to collect by taxation is not void, but obligates the town to exhaust its power, if necessary, to collect a tax sufficient within the statutory limitation of levy of two mills upon the entire taxable property within its jurisdiction.

*Appeal*, from a decree for complainant, from the Fourth Judicial District Court, Colfax County.    Reversed.

The facts are stated in the opinion of the court.

J. H. CRIST and W. H. POPE of counsel for appellant.

The power of the court to hold a contract of the character of the contract in question, void as to any excess over the limit fixed by law seems recognized by a number of authorities. Dunn v. Great Falls, 31 Pac. Rep. 1017; Culbertson v. Fulton, 127 Ill. 30; Comp. Laws, 1884, sec. 1622, par. 67-71. See, also, United States v. Macon County, 99 U. S. 582; Quincy v. U. S., 113 Id. 332; Webster v. People, 98 Ill. 343; State v. Babcock, 20 Neb. 522; Parker v. New Orleans, 38 Fed. Rep. 782; Findley v. Hall, 43 Pac. Rep. 28; Bank v. Lansing, 25 Mich. 207.

It is insisted that complainant has invested a large sum of money in its plant, which fact is urged as a reason why a court should hesitate to declare the contract invalid, even in part.    On this point, see:    Waite, C. J., in U. S. v. Macon Co., supra; Risley v. Howell, 57 Fed. Rep. 544; Insurance Co. v. Oswego, 55 Id. 361; Brenham v. Bank, 144 U. S. 188; Doon Township v. Cummings, 142 Id. 566; Law v. People, 87 Ill. 385; Durango v. Pennington, 8 Colo. 257; Sullivan v. Leadville, 11 Id. 483; State v. Murphy, 31 S. W. Rep. (Mo.) 784; Bank v. Stillwater, 45 Fed. Rep. 544; Price v. Quincy, 188 Ill. 443.    See, also, Guthrie v. Bank, 58 Pac. Rep. 4; Law v. People, 87 Ill. 385; People v. May, 10 Pac. Rep. 652;

Buchanan v. Litchfield, 102 U. S. 278; Litchfield v. Ballou 144 Id. 193; Dillon on Mun. Corp., sec. 461; Richardson v. Grant Co., 27 Fed. Rep. 495; Bank v. Willow, 44 N. W. Rep. 1001; McElhenny v. Superior, 49 Id. 705; McBrien v. Grand Rapids, 22 Id. 205; Chicago v. Shober, etc., 6 Ill. App. 560.

Warren, Fergusson & Gillett and A. C. Voorhees and W. C. Wrigley for appellee.

The questions of law presented on this appeal resolve themselves into but one, as stated by appellant, viz.: "Is the contract between the parties hereto, providing for a semi-annual payment of $1,962.50, as water rent, void?"

An examination will show that the question here presented is not decided in any of the cases relied upon by appellant. On the other hand, the controlling authorities are explicit to the effect that the town was authorized to levy and collect taxes for general and special purposes, and to appropriate money for general corporate purposes, etc. Comp. Laws, 1884, sec. 1622, pars. 2, 3, 6; Grant v. Davenport, 36 Iowa, 396; Des Moines v. Water Co., 64 N. W. Rep. (Iowa) 269, 279; Coy v. City Council, 17 Iowa, 1; Coffin v. City Council, 26 Id. 515; Drasly v. Cedar Falls, 27 Id. 233; Water Co. v. Woodward, 49 Id. 58; Water Works v. Creston, Dist. Ct. Union Co., Iowa, Jan. Term, 1896; 15 Am. and Eng. Ency. of Law, 1115; 29 Id. 11; 1 Dill. on Mun. Corp. 161; Valparaiso v. Gardner, 97 Ind. 1; East St. Louis v. E. St. L. G. L. & C. Co., 98 Ill. 415; 37 Am. Rep. 97; Smith v. Dedham, 144 Mass. 177; Water Co. v. Utica, 31 Hun. (N. Y.) 431.

In regard to ordinance No. 65, requiring all town warrants issued after June 1, 1895, to be received in payment of all town licenses, it seems superfluous to argue that the preference sought to be given to such warrants is in direct violation of the statute. Comp. Laws, secs. 1649, 1650; Fazende v. Houston, 34 Fed. Rep. 95.

LAUGHLIN, J.—The complainant corporation, the Raton Waterworks Company, filed its bill of complaint in the

court below against the defendant corporation, the town of
Raton, and among the allegations it alleged that it entered into
a certain contract with the said defendant corporation, by which
it agreed and bound itself, its successors and assigns, to supply
the said defendant corporation with water for a period of
twenty-five years from the twenty-fourth day of July, 1891.
This contract was an exclusive grant to complainant corpora-
tion by the defendant corporation, and was in the nature of an
ordinance adopted and approved by the board of trustees of
said defendant corporation, and was and is known in the record
in the cause as "Ordinance No. 10;" and such parts thereof as
seem material to the decision of the cause are as follows, to wit:

"Sec. 4.   Said Raton Waterworks Company, its succes-
sors and assigns, shall lay and extend pipes for carrying said
water to any part of the aforesaid town when requested so to
do by the board of trustees; provided, persons owning prop-
erty along the line of such proposed extensions shall take a
reasonable amount of water; and provided also, there shall be
ordered set in each street or lane by said trustees, on which
said company or its assigns shall be required to lay pipe, one
hydrant for every eight hundred feet of main pipe so laid or
extension ordered."

"Sec. 9.   The said town hereby exempts from all taxes
for a term of twenty-five years from and after the date speci-
fied in section 1, July 15th, 1891, the property of said water-
works company of every name, nature and description which
may be used by it in the conduct of its business.    *    *    *

"Sec. 10.   In consideration of the benefits that will
accrue to the town of Raton and its people by the erection
and operation of waterworks, and for the better protection of
the town against fires, the town of Raton does hereby agree
and bind the said town to rent from the said Raton Water-
works Company, or its assigns, for the aforesaid term of twen-
ty-five years, twenty-five hydrants for the purpose of extin-
guishing fires and purposes pertaining to the fire department,
flushing sewers and irrigating public school grounds and parks,

and the said town, by the said board of trustees, hereby agrees and binds the said town to pay to the said Raton Waterworks Company, or its assigns, at the rate of one hundred dollars per year for each of said twenty-five hydrants. That the said board of trustees further agree and bind the said town of Raton to pay said Raton Waterworks Company, or its assigns, the sum of seventy-five dollars per year for each hydrant for the next twenty-five additional hydrants that may be ordered set and erected by said board of trustees, and fifty dollars per year for each subsequent hydrant ordered set and erected thereafter by said board of trustees; provided, the said Raton Waterworks Company, or its assigns, shall erect and maintain at all times in good repair double-discharge fire hydrants with four-inch connections to the main pipe, and two and one-half inch hose connections with each hydrant.

"Sec. 11. The said town of Raton shall pay to the said Raton Waterworks Company, or its assigns, as follows, to wit: On the first day of January and July of each and every year one-half of the aforesaid money, and for all additional hydrants thereafter in like manner on the 1st day of January and July as aforesaid. The said town agrees to levy and collect a tax sufficient for the purpose of making said semi-annual payments for each and every one of the twenty-five years aforesaid, and in default of making said payment the said town shall pay interest on said semi-annual payments at the rate of ten per cent per annum."

"Sec. 15. Within thirty days after granting of this franchise the said Raton Waterworks Company shall file with the town recorder of said town its acceptance in writing of all the terms, provisions and conditions of this ordinance, which acceptance, before filing, shall be duly acknowledged before some officer authorized to take acknowledgments, and the same shall be recorded in the book of ordinances of said town, and safely kept by the said town recorder; provided, the same shall be ratified by a vote of the people of this town as is hereinafter provided.

"Sec. 16.    An election for the ratification or rejection of this ordinance shall be held in the town of Raton, at the hose house on the first day of August, A. D. 1891.    *    *    *"

The foregoing ordinance was ratified by the qualified electors of the defendant corporation as therein provided. And the contract was duly accepted by the complainant corporation, as therein provided.

It appears in the record from the said bill of complaint that at the request of the board of trustees of defendant corporation complainant put in forty-four hydrants, in the manner specified, the semi-annual rentals of which amounted to $1,962.50. It further appears that defendant corporation paid at that rate, semi-annually, to complainant corporation its water rents in money, and by its warrants duly issued for any balance due and for accrued interest, in accordance with said contract and ordinance number 10, up to the year 1895; that on May 23, 1895, the defendant corporation enacted ordinance number 64, under which it declined to pay more than the revenues derived from a two-mills levy on the dollar each year on taxable property within said defendant corporation. Complainant prays for a specific performance of the contract under ordinance number 10, and for an order perpetually restraining defendant corporation from enforcing ordinance number 64.

The defendant corporation, in its answer, admits that complainant corporation complied with its part of the contract, as stated in said ordinance number 64. But "defendant denies that said ordinance number 10 became and was and now is valid and operative, and in full force and effect, and obligatory upon both of the parties to this cause." Also "defendant denies that under said ordinance and contract it became and was and now is the duty of defendant to pay complainant as rental for the said hydrants the sum of $1,962.50 on the first day of January and July of each year after the making of the said contract or ordinance. Defendant denies that said sum of $1,962.50 is the just sum due under the said contract, and it further and specifically denies that it was and is defendant's

duty under said contract or ordinance to levy and collect a tax
sufficient to meet said alleged semi-annual obligations of
$1,962.50." And "defendant denies, however, that said
ordinance was enacted wrongfully and without authority
of law, and, on the contrary, insists that the same is valid,
and in full force and effect. Defendant further denies
that said ordinance numbered 64 was and is invalid,
illegal and void by reason of being in conflict with the
terms of said ordinance numbered 59, or any other ordi-
nance." And "defendant denies that it has at any time
or place refused to perform its duty under the contract
and ordinance referred to in complainant's bill, but, on the
contrary, shows that it has performed, and will perform, its
obligations toward complainant under said ordinance, so far
as the same is binding, valid and of force and effect. De-
fendant admits that it has given out that said contract, so far
as it calls for the payment of $1,962.50 semi-annually, is
inoperative and invalid, and further admits that it has refused
to pay said sum of $1,962.50 semi-annually; and for cause of
such refusal, defendant, further answering, shows to your
honor as follows: That defendant is a municipal corporation,
organized under the laws of the territory of New Mexico, as
contained in sections 1608 et seq., as amended, of the Compiled
Laws of said territory. And as such municipal corporation it
granted to complainant, a private incorporated company, the
right to build, maintain and operate waterworks as herein-
after admitted; and as hereinbefore set forth defendant con-
tracted with complainant to furnish water as is fully set forth
in said ordinance numbered 10. Defendant further shows
that under the law it is authorized, empowered and required
to levy each year, and cause to be collected, a special tax
sufficient to pay off the water rents agreed to be paid to com-
plainant; provided, the said special tax shall not exceed the
sum of two mills on the dollar for any one year. Defendant
shows that, as practically its entire revenue is derived from its
tax levy, it is thus limited in its payments for water rents to
the proceeds of a two-mills tax levy on each dollar of taxable

property.    Defendant further shows that for the year 1891
the total assessment for town purposes, as certified by the
county assessor, was $628,940; that the town tax rate for said
year was five mills on the dollar, making a total possible tax
yield $3,119.70, and giving an actual tax yield of $2,089.52.
For the year 1892 the total assessment was $673,900, the tax
rate eight mills on the dollar, and the actual amount of taxes
collected $3,204.39.    For the year 1893, the total assessment
was $807,230, the tax rate was six mills, and the taxes actually
collected amounted to $2,718.83.    For the year 1894 the total
assessment was $650,620, the tax rate was ten mills on each
dollar of taxable property, and the amount of taxes actually
collected was $3,616.52.    Defendant shows that under the
law it paid complainant each year the full proceeds of the two
mills tax levy authorized by law for water rents; that in 1892
it paid complainant the sum of $1,925, in 1893 the sum of
$1,800, in 1894 the sum of $1,600, and for 1895 it has, under
ordinance numbered 64, levied said special tax of two mills
on each dollar of taxable property to meet complainant's water
rent.    Defendant shows that under the law the total amount
appropriated for any purpose for any fiscal year can not exceed
the probable amount of revenue for that year, and that its
appropriation of $1,500 in said ordinance numbered 64, for
complainant's benefit for the year 1895, is a full compliance
with complainant's legal demand under said contract ordinance
numbered 10, as likewise amounts paid for 1892, 1893 and
1894 are in full of all that complainant can in equity and good
conscience demand under its contract with defendant.    Your
defendant, further answering, shows that said alleged semi-
annual rental of $1,962.50, claimed by complainant, is far
in the excess of the amount derivable from a two-mills tax levy
on the assessed value of the property subject to taxation within
said town of Raton, and that said rental, so far as it is in excess
of the proceeds of such a tax levy, is illegal, inoperative, and
void.    Defendant further shows that said ordinance numbered
10, so far as the same imposes upon the defendant the obliga-
tion to pay complainant an annual sum greater than the pro-

·ceeds of a two-mills tax levy, or to impose a tax levy greater than said rate, was and is null, void and inoperative, the same having been made and entered into by defendant's trustees in violation of law, and in excess of the powers conferred upon them by the statutes of New Mexico. Defendant further shows that said warrants issued to complainant, as set forth in complainant's bill, were and are null and void, having been issued by defendant's trustees in excess of the amount derived from a two-mills levy on each dollar of taxable property, and having thus been issued contrary to law, and in excess of the authority conferred upon said trustees by law. Defendant further shows that for the reasons just mentioned ordinance numbered 59 was and is void and inoperative, and that ordinance numbered 64 was and is valid, and in full force."

Such parts of ordinance numbered 59 as appear pertinent are as follows, to wit:

"Section 1.   That the general tax levy for the town taxes for the fiscal year commencing on the 1st day of April, 1895, shall be and is hereby declared to be ten mills for and upon every one dollar (1.00) of assessable property, both personal and real, within the corporate limits of the town of Raton, the same to be assessed and collected according to law.

"Sec. 2.   There is hereby appropriated out of money and revenues covered into the town treasury, or to be collected and paid into the same, from any and all sources, during the fiscal year commencing on the 1st day of April, 1895, whether the same be derived from taxes, licenses, fines, fees or any other source whatsoever, for the following purposes and objects, the following sums and amounts, to wit:   To pay all outstanding indebtedness of the town the following amounts: Amount due the Raton Waterworks Company up to January the 1st, 1895, $4,735.15."

The sum of $4,735.15, referred to, it appears, was a deficit claimed by complainant to be due from the defendant up to that date.

The bill of complaint was sworn to, but an answer under oath was expressly waived, and it was not under oath, and no

replication filed by the complainant to the bill of complaint. There were no proofs taken on either side, and the cause was heard on bill and answer. After final decree was entered, defendant assigned errors as follows: "First. That the court below erred in holding that ordinance No. 10, of the town of Raton, granting franchise to the Raton Waterworks Company to erect and maintain waterworks, published May 24, 1891, and alleged to have been duly ratified and confirmed at an election held in the said town of Raton on the 1st day of August, 1891, became and was and now is valid and operative, and in full force and effect, and in all respects obligatory upon the town of Raton. Second. That the court erred in finding all the material allegations in the said bill of complaint to be true as therein stated. Third. That the court erred in decreeing a specific performance of said ordinance numbered 10 by and on the part of the town of Raton. Fourth. That the court erred in decreeing that the town of Raton is by reason of said ordinance numbered 10 indebted to the said Raton Waterworks Company in the sums mentioned in the said decree, or in any amount whatsoever, and in decreeing that said town of Raton issue to the said Raton Waterworks Company its warrants in payment and satisfaction of the amounts thus found to be due under said ordinance numbered 10."

. The enactment of ordinance numbered 10 by the trustees of the defendant town, a submission and approval of the same by a majority of the electors thereof, and the acceptance of the propositions therein by the complainant corporation are admitted by the answer, and this constituted the contract over the terms, conditions and construction of which this controversy arose, and of which we are required to determine. It is alleged in the bill of complaint, and admitted by the answer, that the water plant of the complainant was constructed in compliance with the requirements of the contract, and that the defendant town is and has been using and reaping the benefits of its part of the results of the contract. It is also alleged and admitted that complainant put in forty-four hydrants in the manner prescribed in the contract, and that by the terms

of the contract defendant town, by its board of trustees, agreed
and obligated itself to pay for twenty-five of said hydrants
$2,500 per annum, and for the other nineteen the sum of $75
per annum, for twenty-five years; and that the defendant
town agreed to pay as such water rentals the sum of $1,962.50
semi-annually on the first day of January and July of each
year thereafter for the period of said twenty-five years. The
defendant town avers that the contract so made is void pro
tanto, if not void in toto, because it avers that it (the defendant
town) is limited by statute to an assessment and levy of not to
exceed two mills on the dollar of its taxable property to pay
such water rents each year, and no more; and that the sum
derived from a two-mills levy each year is not sufficient to pay
the sum of $1,962.50 semi-annually, each year, as provided
in said ordinance and contract; and that the trustees of the
defendant town had no authority to bind it by the passage of
said ordinance numbered 10, and the making of the contract
thereunder; and that such action was ultra vires, and void pro
tanto. The reply to this by the complainant corporation is
that, while the proceeds derived from the two-mills levy is
insufficient to pay the said sum of $3,925 per annum, yet the
defendant town has the authority, under the statute, and that
it is bound, under the terms of the said ordinance and contract,
to pay any deficiency which may arise over and beyond the
two-mills levy out of the taxes collected for general current
expenses; and the trustees of the defendant town had full
authority to enact ordinance numbered 10, and to make the
contract thereunder, after the same has been submitted to and
voted for by a majority of the qualified electors of said de-
fendant town corporation, and that the defendant town is
bound thereby.

This brings us up to the issue in the cause, as stated in
complainant's brief. Is the contract between the parties
hereto, providing for a semi-annual payment of $1,962.50 as
water rent, void? A court should labor to sustain the validity
of a contract entered into in good faith, and where no fraud
appears, and where a consideration has passed from the one,

and been received by the other, so long as there is any apparent authority existing at the time in the parties thereto for the making of the same; and the burden rests upon those who attack its validity to make it appear that it is voidable, void pro tanto, or void ab initio.   On the other hand, a court should not hesitate to declare a contract void when it is made to appear for any reason that it should be done; and this rule should apply, and does apply, as to all classes of contracts, whether between corporations and individuals or between individuals.   It appears that both the complainant waterworks company and the defendant town of Raton were duly and legally incorporated under the laws of this territory, and that said defendant town corporation was organized and exists under and by virtue of the general incorporation laws of the territory, from section 1608 to and including section 1724 of the Compiled Laws of 1884, and the amendments thereto, relating to incorporated cities and towns; and the authority for making the contract in question is found in that statute, and the part applicable thereto is as follows, to wit:   "Sec. 1622, par. 71.   And if the right to build, maintain and operate such works is granted to private individuals or incorporated companies by such cities or towns, and said cities or towns shall contract with said individuals or companies for supply of water or gas for any purpose, such city or town shall levy each year and cause to be collected a special tax, as provided for above, sufficient to pay off such water or gas rents so agreed to be paid to said individuals or company, or company constructing said works; provided, however, that said last mentioned tax shall not exceed the sum of two mills on the dollar for any one year."   It is shown in defendant's answer, and it is not denied by any replication or proofs by complainant, that it has paid complainant the proceeds of a two-mills levy and more each year on all the taxable property within defendant's corporate limits, since the contract was entered into.   It further appears in the answer that the total assessed valuation of the property subject to taxation, within the corporate limits of said defendant town in the year 1891, and at the time the

contract was entered into, was $628,940, and that the total tax
yield for that year on a five-mills levy was $2,089.52, being
only $127.02 more than one-half the money to make one semi-
annual payment.    For the year 1894 the total assessed valua-
tion was $650,620, the levy was ten mills on each dollar of the
assessed valuation—the full limit allowed by law—and the
amount of taxes actually collected was $3,616.52.    This was
the largest sum collected in any one of the four years, and was
insufficient to pay the yearly water rental contracted by de-
fendant to be paid to the complainant, thus consuming all the
revenues of defendant town arising from taxation, and creat-
ing a deficiency of $308.48.    The total amount of taxes col-
lected for the years 1892, 1893 and 1894 amounted to the
sum of $9,539.74.    The total amount due complainant under
the contract for this period beginning July 1, 1892, the date
the waterworks was accepted by defendant town, was $9,-
812.50.    Thus it is plainly shown that the entire sum derived
from taxes collected as levied on the property subject to taxa-
tion within the corporate limits of the defendant town was
insufficient to pay the water rents contracted to be paid by it.
To meet the deficiencies as they occurred from time to time,
the defendant issued its warrants, and it appears from ordi-
nance numbered 59, in the record there, that on March 18,
1895, there was a deficit due complainant of $4,735.15, after
having received from defendant the sum of $5,325 as water
rents, and which it avers was fully two mills on the dollar of
its taxable property during that time.    And it contends that
the warrants issued in payment of said deficiency were so
issued by its trustees without authority of law, are in excess of
the amount authorized, and are void.    It is not shown from
what other sources the defendant derives revenues, but it
avers that practically all is derived from taxes collected from
the levies made on all of its property subject to taxation.    It
also appears from the record and ordinance numbered 59,
which complainant here seeks to have enforced, that on the
first day of April, 1895, the then existing indebtedness of the
defendant town was about $7,000; and that the appropriation

for the current expenses for the fiscal year from that time to
April 1, 1896, was about $6,000. The record does not dis-
close the assessed valuation of the property subject to taxation
within the limits of the defendant town for the year 1895, but,
assuming that it was about the same as that of the previous
year, the tax yield would fall short of the amount required to
pay the water rents, even if a ten-mills levy, the full limit
allowed by law for all purposes, had been made each year.

It appears that the cause was set down and heard on the
bill and answer in pursuance of a stipulation of the parties
thereto, but the stipulation does not appear in the record, and
the averments in the answer well pleaded are presumed to be
true. "If no replication is filed, the matters of defense set up
in defendant's answer will, on hearing, be considered as ad-
mitted by the plaintiff, although the answer is not under oath."
Equity rule 34 of this court; 1 Daniell, Ch. Prac. *p. 846, and
note.

We are now brought directly to the first question for de-
termination: Had the trustees of the defendant town corpo-
ration the authority to enact ordinance numbered 10, and
enter into the contract in question, and thereby bind the de-
fendant town to pay out of the revenues derived from taxation
for general purposes any sum in excess of that to be derived
from a levy of two mills on the dollar on its tax-
able property for each year? We are of the
opinion that the trustees did not have authority
and power to so contract and bind defend-
ant town in the manner as provided in said ordinance num-
bered 10. The statute (Comp. Laws, sec. 1622, par. 71),
after the provisions authorizing cities and incorporated towns
to construct and operate water and gas works and for the assess-
ment of water and gas rents on the inhabitants using the same,
says: "And at the regular time of levying taxes in each year
said city or town is hereby empowered to levy and cause to be
collected, in addition to other taxes authorized to be levied, a
special tax on taxable property in said city or town, which tax,
with the water or gas rent hereby authorized, shall be sufficient

CONTRACT: special
tax levy: statu-
tory construc-
tion.

to pay the expenses of running, repairing and operating such works." There is no ambiguity or doubtful meaning about this part of the statute. It clearly means just what it says; that is, that the proceeds from "a special tax" and the proceeds derived from the water rents prescribed by ordinance "shall be sufficient to pay the expenses of running, repairing and operating such works." This applies when a city or incorporated town constructs its own waterworks, and there is no intimation whatever that any other revenues shall be applied to the support and maintenance of the waterworks, and no interpretation can be read into this part of the statute by which the trustees of a town constructing its own waterworks would be authorized to apply any of the revenues levied and collected for the general and current expenses of the town to the support and maintenance of its own waterworks. When the right to construct and maintain such waterworks is granted to individuals or an incorporated company, and shall contract for a water supply for any purpose, "such city or town shall levy each year, and cause to be collected, a special tax, as provided for above, sufficient to pay off such water or gas rents so agreed to be paid to said individuals or company constructing the works." Again, it is provided that " such city or town shall levy each year, and cause to be collected, a special tax, as provided for above," sufficient to pay off all such water rents agreed to be paid to such company. The phrase, "as provided for above," refers back to the conditions wherein the city or incorporated town constructs the waterworks, and can mean nothing else. Now, what is meant by the words "a special tax" is fully explained in the proviso to this paragraph, as follows: "Provided, however, that said last-mentioned tax shall not exceed the sum of two mills on the dollar for any one year." By this proviso the "special tax" is limited to the proceeds derived from a two-mills levy for any one year to pay for water rents provided for in said ordinance numbered 10 and the contract thereunder. This proviso is manifestly a limitation on the sum to be paid for the water rents by the special tax, and an inhibition on the trustees of defendant town from

paying any more than the sum derived from a two-mills levy on the dollar upon the property subject to taxation within its corporate limits. "The office of a proviso, generally," said Mr. Justice Story, in Minis v. U. S. 15 Pet. 423, "is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview." Mr. Chief Justice Fuller, in Austin v. U. S., 155 U. S. 417 (15 Sup. Ct. 167), says: "While we concede that the law does not attach a fixed and invariable meaning to a proviso, we think it clear that this proviso negatived the authority granted beyond the limit defined." The limit defined by the proviso now under consideration is the proceeds derived from a levy of two mills on the dollar of the assessed valuation of the taxable property in each year for water rents; that is, the trustees of the defendant town can assess, levy, collect, and apply each year the proceeds arising from two mills on the dollar of all taxable property in payment of the water rents, and no more. This sum, together with the water rents it receives from the consumers of its product, puts the complainant water company on the same and an equal footing with the defendant town had it constructed its own waterworks; and it is not contended, nor is there any reason why, the water company should have any other or more extensive rights granted it than the town corporation would or should have had if it had elected to construct and maintain its own water system.

The general incorporation law, under which the defendant town was incorporated, provides (section 1724, Comp. Laws 1884): "No more than one per centum ad valorem shall ever be levied or collected by any corporation organized under this act upon the assessed value of the taxable property situate within the limits of such corporation for all purposes, and no indebtedness shall be incurred which will require any greater annual expenditure, than one per centum will fully pay off and satisfy." It is apparent from this section that the defendant town corporation as well as all similar municipal

corporations organized under this act, are limited to an assessment and levy of one per centum of each dollar of taxable property within the corporate limits in payment of all the expenses incurred for all purposes; and no indebtedness shall be incurred which will require any greater annual expenditure than the sum so realized shall fully pay off and satisfy. The construction here placed upon paragraph 71 of section 1622 is supported by paragraph 6 of the same section, which provides that cities or incorporated towns may contract an indebtedness by borrowing money or by issuing bonds "for the purpose of the purchase or construction of waterworks for fire and domestic purposes;" but it is further provided in this paragraph as follows: "And no loan for any purpose shall be made, except it be by ordinance, which shall be irrepealable until the indebtedness therein provided for shall be fully paid, specifying the purpose to which the funds to be raised shall be applied, and providing for the levying of a tax not exceeding, in total amount for the entire indebtedness of the city or town (excepting such debts as may be incurred in supplying the city or town with water or waterworks), eight mills upon each dollar valuation of the taxable property within the city or town, sufficient to pay annual interest and extinguish the principal for such debt within the time limited for the debt to run   *   *   *   and provided that said tax, when collected, shall only be applied to the purpose in said ordinance specified, until the indebtedness shall be paid and discharged." This paragraph limits the assessment and levy for all purposes, except for water or waterworks, to eight mills on each dollar of the assessed valuation of the taxable property; and paragraph 71, supra, fixes and limits the special tax provided to be collected for water rents at two mills; and section 1724 limits the total levy and collection to ten mills on each dollar of the assessed valuation of the taxable property within the corporate limits of the town. And it seems to us that the trustees of defendant corporation are clearly limited to the payment for water rents to the revenue derived from the two-mills levy each year.

Complainant contends that if the levy of the special tax of two mills was insufficient to pay the water rents, then it was the duty of the defendant's trustees to pay any deficiency out of other revenues available from the funds for other and general purposes. But this position is untenable for the reason: First, because paragraph 6, supra, provides "that said tax, when collected, shall only be applied to the purposes in said ordinance specified." This prohibits the trustees from diverting any revenues assessed and collected from the purposes specified in the ordinance for which such levy and collection was made. And, second, because it is shown that the largest sum realized in any one year was $3,616.52, on a levy of ten mills on the dollar upon all the property subject to taxation within the corporate limits of the defendant town, an amount clearly insufficient to pay the annual water rents of that year of $3,925; thus leaving nothing for the other current expenses of the town corporation, which, as shown by complainant's own exhibit, ordinance number 59 for 1895, amounted to over $3,000. And, third, because the trustees of the defendant were prohibited from assessing, levying or collecting more than ten mills on the dollar for all purposes, general and special. The language employed in the statutes hereinbefore extracted from seems to be clear and positive, and that no reasonable doubt can exist as to the construction to be placed upon them. They bristle all over with limitations and provisions on the subject and powers of taxation, and right well they may for the protection of the taxpayers. In City of Litchfield v. Ballou, 114 U. S. 190, (5 Sup. Ct. 820), —a cause involving similar principles,—Mr. Justice Miller, speaking for the court, said: "The language of the constitution is that no city, etc., 'shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property.' It shall not become indebted; shall not incur any pecuniary liability. It shall not do this in any manner; neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for

any purpose, no matter how urgent, how useful, how unanimous the .wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt in any manner, or for any purpose whatsoever. If this prohibition . is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law." In Citizens' Sav. & Loan Ass'n v. City of Topeka, 20 Wall. 660, the court said, in referring to general powers and restrictions in the statute: "It is, therefore, to be inferred that when the legislature of the state authorizes a county or city to contract a debt by bond it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself or in some general statute a limitation upon the power of taxation which repels such an inference." As has before been shown, we have special provisos, and a general statute limiting the indebtedness for any and all purposes to ten mills on each dollar on the assessed valuation for each year. Davenport v. Kleinschmidt (Mont.), 13 Pac. 249. "The assessed valuation of the city of York was the sum of $335,000. The vote authorized the issue of, and it is now sought to compel the defendant (city mayor) to certify, bonds to the amount of thirty thousand dollars, bearing interest at the rate of six per centum per annum. The statute limits the levy of tax for waterworks 'to an amount not exceeding five mills on the dollar in any one year on all the property within such city or village as shown and valued upon the assessment rolls.' Comp. Laws 1885, chap. 14, sec. 69, subd. 15. This is a limitation upon the power of the city council beyond which they have no authority to issue bonds." State v. Babcock, 20 Neb. 522.

Complainant insists that under paragraphs 2, 3, sec. 1622, supra, the defendant had authority, and its duty was, to assess, levy and collect taxes for general and special purposes sufficient to pay all debts it contracted. Among the

powers conferred on municipal corporations by
said paragraph 2 is "to appropriate money for
coporate purposes only, and provide for pay-
ment of debts and expenses of the corporation."
Paragraph 3 is "to levy and collect taxes for general and
special purposes on real and personal property." There is
nothing in either paragraph requiring a different construction
than as before given, and nothing to change the effect of the
limitation in paragraph 71, supra. If there had been nothing
in the act to the contrary, it might, perhaps, have been fairly
inferred that it was the intention of the legislature to grant
full power to tax for the payment of the extraordinary debt
authorized to an amount sufficient to meet both principal and
interest at maturity. This implication is, however, repelled
by the special provision for a tax of one-twentieth of one per
cent. And the case is thus brought directly within the
maxim, "Expressio unius est exclusio alterius." U. S. v.
Macon Co.

But it is further insisted by the complainant that it in-
vested $115,000 in the construction of its waterworks system,
and has fulfilled all the conditions in the contract to be by it
performed; and that the defendant town corporation has re-
ceived the benefits accruing to it by the terms of said contract;
and that it should be required and bound to pay for the same
according to the terms and conditions of said contract; and
that it should not be permitted to repudiate its obligations
therein contained; and that it would be contrary to public
policy, and a violation of its public duty, to permit it so to do.
With the conscience of the defendant corporation (if it has
any), its moral obligations, or the question of public policy, if
any such question is here involved, this court in this cause, as
it is here presented, has no concern whatsoever. The question
of this court is one purely of law, as to the right of these two
corporations, and must be considered and determined as pre-
sented to us on the bill and the answer. And we have said
before that the trustees of the defendant had no authority in
law to enter into the said contract in such a manner as to bind

(margin note) COMPILED LAWS, sec. 1622, pars. 2, 3, 6: statutory construction.

the defendant town to pay for water rents any sum in excess of the proceeds derived from a levy of two mills on each dollar on the assessed valuation of all property subject to taxation within the corporate limits of the defendant town each year during the continuance of said contract. This they were authorized to do, and no more. If the representatives of the complainant had, before they entered into the contract, turned to the public statutes under which it was made, they would have seen what is apparent to us, and what would seem no two persons of ordinarily sound and discriminating judgment could have arrived at a different conculsion, was a clear, distinct, and positive prohibition against the payment of more than the proceeds arising from said two-mills levy. These statutes were public notice as to their contents, and alike binding on both corporations. The complainant knowing, as it is presumed to know, that the defendant was limited by the statute of its creation to a two-mills levy for the discharge of its obligation under ordinance number 10, it should not be heard to complain that the trustees of the town refused to transcend that power. Complainant made this contract with its eyes open, and when the law advised it that its two-mills levy was sacred against the demand of other creditors, furnishing protection just as necessary for the well-being of citizens as complainant. It also advised it that the other eight mills within the ten-mill limit of taxation for all purposes was sacred from a claim of this nature. "The difficulty lies in the want of original power. While there has undoubtedly been great recklessness on the part of the municipal authorities in the creation of bonded indebtedness, there has not unfrequently been gross carelessness on the part of the purchasers when investing in such securities. Every purchaser of a municipal bond is chargeable with notice of the statute under which the bond was issued. If the statute gives no power to make the bond, the municipality is not bound, so, too, if the municipality has no power, either by express grant or by implication, to raise money by taxation to pay the bond, the holder

STATUTES: notice: estoppel.

can not require the municipal authorities to levy a tax
for that purpose.    If the purchaser in this case had examined
the statutes under which the county was acting, he would have
seen what might prove to be difficulty in the way of payment.
As it is, he holds the obligation of a debtor who is unable to
provide the means of payment.    We have no power by man-
damus to compel a municipal corporation to levy a tax which
the law does not authorize.    We can not create new rights
or confer new powers.    All we can do is to bring existing
powers into operation.    In this case it appears that the special
tax of one-twentieth of one per cent has been regularly levied
and applied, and no complaint is made as to the levy of the
one-half of one per cent  for general purposes.    What is
wanted is the levy beyond these amounts, and that, we think,
under existing laws, we have no power to order."   U. S. v.
Macon Co., supra.    And so, in Law v. People, 87 Ill. 385:
"It is said that to so hold will work great hardships and in-
justice on the holders of these certificates of indebtedness.
The same may be frequently said of any other persons who
violate the law, or act contrary to its provisions.    The persons
loaning this money did it in the face of this constitutional pro-
vision, and the prohibition contained in the sixty-second sec-
tion of the charter.    The law is, and all persons are presumed
to know it, that municipal bodies can only exercise such powers
as are conferred upon them by their charters; and all persons
dealing with them must see that the body has power to per-
form the proposed act.    *    *    *    But, should it work hard-
ships to individuals, that by no means warrants the violation
of the plain and emphatic provision of the constitution.    The
liberty of the citizen, and his security in all his rights, in a
large degree depend upon a rigid adherence to the provisions
of the constitution and the laws and their faithful perform-
ance.    If courts, to avoid hardships, may disregard and refuse
to enforce their provisions, then the security of the citizen is
imperiled.    The will—it may be unbridled will—of the judge
would usurp the place of the constitution and the laws, and
the violation of one provision is liable to speedily become a

precedent for another, perhaps more flagrant, until the con-
stitutional and legal barriers are destroyed, and none are secure
in their rights." Coler v. Cleburne, 131 U. S. 162 (9 Sup.
Ct. 720).

Under our form of government there is no power more
frequently used as an abuse than the power to levy and collect
a tax, and, while it is absolutely necessary to levy and collect
taxes sufficient for the proper and necessary support of the
government, either general, local, or special, yet experience
taught that this power has been often used to oppress the
citizen, and to deprive him of his property and his natural
rights, and only too often for the benefit of the reckless or
careless adventurer and speculator; and then, when an attempt
is made to check them in their adventurous and reckless
career by invoking the aid of the law in behalf of the
legal rights of the citizens, they cry out, "Repudiation!"
There is no such thing as repudiation when there was
no original authority vested in the taxing power by which
it is sought to levy and collect the tax. And courts
always have and always must arrest any attempt to
enforce the collection of a tax when it is apparent that the
power to so do was not originally and clearly vested in the
taxing power. A case which tested the very foundation,
strength and stability of our government more thoroughly
than any other, perhaps, was McCulloch v. Maryland, 4
Wheat. 316, in which Marshall, the great chief justice, said:
"That the power to tax involves the power to destroy; that
the power to destroy may defeat and render useless the power
to create. * * * But all inconsistencies are to be con-
sidered by the magic of the word 'confidence.' Taxation, it
is said, does not necessarily and unavoidably destroy. To
carry it to the excess of destruction would be an abuse to pre-
sume which would banish that confidence which is essential
to all governments." Incidents are not infrequent where
municipalities, through the power to tax, have attempted
through that power to illegally and inequitably oppress private
corporations of a quasi public nature, and courts have been

compelled to restrain such unauthorized efforts.   And were courts to permit careless, pliable or corrupted trustees of corporations to use their pseudo authorities unbridled, the power to tax would certainly in many instances carry with it the power to destroy.   And the laws so authorizing the taxing power must be construed liberally in favor of the citizen, and strictly against the power invoked to enforce it.   Webster v. People, 98 Ill. 343; 15 Am. and Eng. Ency. Law, 1116.

It is contended by the complainant that our general incorporation law for the organization of cities and towns is taken from the Iowa statute on the same subject.   That may be true, but it is almost a verbatim copy of the Colorado statute, and we feel satisfied that the construction put STATUTORY con- upon the statute by the supreme court of Colostruction. rado is in effect to support the construction here given our own statute.   People v. May, 10 Pac. 641; Sullivan v. City of Leadville, 18 Pac. 736; Town of Durango v. Pennington, 7 Pac. 14; Lake Co. v. Rollins, 130 U. S. 662 (9 Sup. Ct. 651); Dixon Co. v. Field, 111 U. S. 83.   "It is provided by statute that cities have the power to erect waterworks, or authorize the erection of the same; and where such authority is granted to individuals or corporation the city may authorize a charge for the use of the water to be collected from the individuals using the same; and a special tax not exceeding five mills on the dollar in any year, in addition to all other taxes, may be levied for the purpose of paying the expenses and operation of works and which tax, with the water rents, shall be sufficient for that purpose. * * * The obligation of the city is to levy the tax, and see that the amount collected is applied to the specific purposes.   If the special fund legally provided is not sufficient, then it may be well said the deficiency is not payable by the city, and it is difficult to conceive that there can be such a thing as a debt which is never to be paid.   No burden is created thereby, and there can not be such an indebtedness."   Water Co. v. Woodward, 49 Iowa 58.

It is contended by counsel for complainant corporation that the case of Creston Waterworks Co. v. City of Creston, recently decided by the supreme court of the state of Iowa, and reported in 70 N. W. 739, is decisive of the question at issue here, in which that court held in that case "The limitations in section 643, McClain's Ann. Code, are not upon the power to contract for a supply of water for public use, but upon the power to levy this special tax in aid of the payment therefor. When, within the limit of the five-mill tax, the supply can be thus paid for, it must be so paid, but when that source is not sufficient the deficiency may be paid from the general revenues." It may be said that section 643 of the Iowa statute (1 McClain's Ann. Code) is substantially the same as paragraph 71 of section 1622 of our statutes. The distinction here drawn in the case is between the power to contract for a thing and the power to raise money by taxation to pay for the thing contracted for, and is evidently based upon the well-established principle that a city or municipality has two classes of powers, namely, governmental or public power and the proprietary of business powers of a quasi public power. nature. The first is derived directly from the legislative grant, and the second from the discretionary powers inherent in the officers of the municipality, and it is not within the province of a "court to contract or clip the legislative grant," or to restrain or circumvent the discretionary grant or power, so long as it is founded upon sound discretion and good business principles, transacted in good faith, and within the scope of the discretionary powers. Illinois Trust & Savings Bank v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271, and cases cited. In the case under consideration the board of trustees of defendant town had a discretionary grant or power to enter into a contract with complainant corporation for the construction of the waterworks, the quantity of the water supply to be furnished, the number and size of the hydrants, and the price of the hydrant rentals to be paid, the size and extent of the water mains, and the period for which the contract should run—within, of course, the statutory period—the

pressure and quantity of water, and the price to be paid by private consumers of the water, etc.    The legislative grant prescribed the manner in which the revenues should be raised with which payments for the water used by the municipality should be made, and restricted this grant to a special tax levy of two mills on each dollar of taxable property each year, and such other sums as should be realized from the private consumers; and it also gave the authority to make the contract, and prescribed the time within which it should run, and to fulfill the conditions of the contract so made.    But the power to make the contract and to execute the proprietary grant and the business portion of a quasi public nature did not carry with it the power to depart from the course prescribed by the statute for raising revenues with which to pay for the supply of water so contracted to be furnished.    To so hold would be to confer upon the trustees of a municipality the power to abrogate the plain provisions of the statute, which says: "Provided, however, that said last-mentioned tax shall not exceed the sum of two mills on the dollar for any one year."    Comp. Laws, sec. 1622, par. 71.    It has been seen that the revenues of the defendant town realized from all sources in any one year were not sufficient to meet the current expenses of the municipality, and to hold that the deficiency arising after exhausting the sum realized from the two-mill levy might be made up and supplied from the general revenue would be to permit all the revenues to be consumed in the payment of water rentals, and to allow all other municipal obligations to remain unsatisfied, because it has been before shown (section 1724, Comp. Laws 1884) that no more than one per centum ad valorem shall ever be levied or collected for all municipal purposes by any town or city corporation organized under this act, and "no indebtedness shall be incurred which will require any greater annual expenditure than said one per centum per annum will fully pay off and satisfy."    If it shall appear that the sum to be realized from a two-mill levy is insufficient to satisfy the water rentals contracted for, that is a matter for legislative, and not judicial, determination.    It is not reasonable

to presume that the legislature intended to confer upon the boards of trustees of municipal corporations the power to make contracts within the scope of their administrative duties which would consume all the revenue derived from the ad valorem tax of the municipality for one single purpose—in this instance, in satisfaction of water rentals—and leave all other obligations incurred by them to remain unsatisfied. We do not think the authority directly in point for the other reason that the five-mills levy that was the maximum to be levied rested, not on the entire taxable property in the corporated limits, but only in that receiving benefit and protection, while under our statute the special tax for water runs to everything taxable in the same way that the general tax does. Also the fact of there being an absolute inhibition against levying more than eight mills other than for water is a feature not referred to in the cases last cited, and this is a distinction also, in our view, important. The Montana state statute provides that "the amount of corporation taxes to be assessed and levied in any one year * * * for general municipal or administrative purposes shall not exceed three-fourths of one per centum, and for fire and water purposes one-half of one per centum on the assessed valuation of such property and such special assessments as may be levied from time to time." Laws 1889, p. 185, sec. 16. In passing on this statute in State v. Mayor, etc., of City of Great Falls (Mont.), 49 Pac. 15, the court said: "We are of the opinion that this law became part of the contract embodied in said ordinance, and that relators had a right to insist that, in so far as may be necessary to pay what was due it for hydrant rentals in accordance with the rate prescribed in the ordinance contract act, a special tax, as provided for in that act, should be levied annually; of course, in only such sums as should be needed, and not exceeding the five-mill limit. The contract was entered into in contemplation of a special fund being created by the city to meet liabilities incurred thereunder; and the legislature in said act contemplated at the time that cities of the territory should pay

for water used by them for sewerage and fire purposes from taxes levied and collected for that specific purpose."

In the case at bar there is no complaint that the property subject to taxation has not been properly assessed, or that the proceeds of the two-mills levy have not been properly collected and applied; nor that the privileges granted complainant corporation constitute an exclusive franchise in the nature of a monopoly, and therefore void for that reason.

CONTRACT: specific performance: jurisdiction.

These questions would have to be determined in another action. Coy v. Lyons City, 17 Iowa 1, was a mandamus proceeding, and not applicable to the case at bar. Almost all of the Iowa authorities cited are with respect to indebtedness, and we believe, after a careful and considerate examination of all of them, that they do not apply, or in any material respect differ from the position here taken. It is insisted by complainant that the case of City of Valparaiso v. Gardner, 97 Ind. 1, supports its position, but we are of the opinion, after a careful examination, that it is not in conflict with the conclusions we have arrived at in the cause at bar. All that was decided in that case was as to what constitutes an indebtedness, and we fully concur in the conclusions stated by that court. It held, in substance, that municipal bonds, or negotiable obligations of any kind, did constitute an indebtedness, but that a contract to pay a certain fixed sum per month or per year for a certain term of years did not constitute an indebtedness, within the meaning of the constitutional or statutory limitations. We do not hold that the contract in question here creates an indebtedness as contemplated by our statute or the act of congress, by which the complainant agreed to furnish and supply water from forty-four hydrants, for which defendant agreed to pay semi-annually the sum of $1,962.50 or $3,925 per year for twenty-five years, making a total sum for that time of $98,125. If that were an indebtedness, the contract would be clearly void, because it would be for an indebtedness beyond the limitation of four per centum prescribed by the act of

congress approved July 30, 1886, as well as the statutory limitation. The complainant might fail to perform its part of the contract, or the defendant might forfeit its rights to receive the water some time during the continuance of the contract, and on the occurring of either event the contract would, on a proper showing, be declared at an end, and no further obligation would rest on either party to the contract. It does not constitute an indebtedness for the whole amount in praesenti. It is a continuing contract from year to year, and is binding on both parties, so long as the conditions therein are not broken. There is nothing negotiable about it in the legal sense of the term. Dill. Mun. Corp. (4 Ed.), sec. 136. The trustees of defendant town corporation had no authority to enact and enforce ordinance number 64, passed May 23, 1895, so as to in any manner change or affect the appropriations then existing for that fiscal year as provided for by ordinance number 59, enacted in March, 1895, for the fiscal years 1895 and 1896; and it is therefore void to that extent.

Section 1636, Comp. Laws 1884: "The fiscal year of each city or town organized under this act shall commence on the first day of April in each year, or at such other time as may be fixed by ordinance. * * * The * * * board of trustees in towns shall, within the last quarter of each fiscal year, pass an ordinance to be termed an annual appropriation bill for the next fiscal year, in which such corporate authorities may appropriate such sums of money as may be deemed necessary to defray all expenses and liabilities of such corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amounts appropriated for each object or purpose." Ordinance number 59 seems to have been passed in accordance with this statute, and should not be permitted to be changed, in so far as its appropriations are legal, by ordinance number 64, which seems to have been passed on May 23, 1895, after the time provided by the statute. The trustees may fix any time for the beginning of the fiscal year, so long as it does not change

appropriations already made in regular and orderly manner.
Sullivan v. City of Leadville (Colo. Sup.) 18 Pac. 736.   The
statute (Comp. Laws, sec. 1649) requires the treasurer of the
town to keep a book, and to register therein each town order,
warrant or other certificate of such town indebtedness in the
order in which it is presented, whether it is paid at the time
of such presentation or not.   "Sec. 1650.   Every fund in the
hands of the treasurer of any such city or town of this territory
for disbursement, shall be paid out in the order in which the
orders drawn thereon and payable out of the same shall be
presented for payment."   The trustees of the defendant town
had no authority to pass and enforce ordinance number 65,
by which it was attempted to make town warrants issued after
June 1, 1895, receivable in payment of town licenses.   The
law provides that they shall be paid in the order of their
presentation as they appear from the book of registry required
to be kept by the town treasurer, and not otherwise.   The
purpose of this ordinance is bad, in that it may permit specula-
tions in town warrants, and might lead eventually to the
issuance of warrants not authorized.   And it is an effort to
divert public funds from their proper channel, and it is void
to that extent.   Fazende v. City of Houston, 34 Fed. 95.
It is not quite clear as to just what permanent and final relief
complainant could obtain, even though the bill should be sus-
tained, and the prayer granted in all its parts, because the
prayer is, first, for specific performance of ordinance number
ten, for the enforcement of the contract.   This court, in a
proceeding of this nature, may declare the validity of the con-
tract; but, if the trustees should refuse to make the levy con-
tended for—which it is alleged and admitted they have done
—then mandamus must be resorted to, to compel them to
make it.   This is in reality the foundation of this whole pro-
ceeding.   We think an action at law by mandamus to compel
the levy to have been made would have disposed of the whole
matter at once.   "(1)   If the city [in this cause the town] is
liable for this money, an action at law is the appropriate
remedy.   The action for money had and received to the plain-

tiff's use is the usual and adequate remedy in such cases, when the claim is well founded; and the judgment at law would be the exact equivalent of what is prayed for in this bill, namely, a decree for the amount against the city, to be paid within the time fixed by it for ulterior proceedings. In this view the present bill fails for want of equitable jurisdiction. (2) But there is no more reason for a recovery on the implied contract to repay the money than on the express contract found in the bonds." City of Litchfield v. Ballou, supra. So, if the warrants upon which payment is sought here are valid, an action at law is the proper remedy to enforce their payment. They have been issued, and are claimed to be outstanding obligations against defendant town, and it says they are void, and therefore declines to pay them. Then, if in any action at law judgment should be entered in favor of the legal holders, and defendant's trustees should decline to provide for their payment, mandamus would be the proper remedy to compel the necessary levy. State v. Mayor, etc., of City of Great Falls (Mont.), 49 Pac. 15; Illinois Trust & Savings Bank v. Arkansas City, 22 C. C. A. 171; 76 Fed. 271. We conclude that ordinance number ten and the contract made thereunder are not void, but that the language of section eleven of said ordinance, that the said town agrees to levy and collect a tax sufficient, etc., means and should be construed as an obligation for the town to exhaust its power, if necessary, to collect a tax sufficient, etc., within the limit of levying two mills upon the entire taxable property within its corporate boundaries. This provision of the law is to be read into the ordinance and the contract thereunder. As the town has, heretofore, it is undisputed, more than complied with its obligation by paying an amount in excess of what could have been derived from a two-mill levy, and as ordinance number 64 provides for the entire proceeds of a two-mills levy being paid to complainant, it is apparent its bill is without equity, and should be dismissed. The decree entered in the court below is reversed, and the bill of complaint will be dismissed, and an order will be entered

CONTRACT: construction.

directing the lower court to dismiss the bill at the cost of complainant, the Raton Waterworks Company; and it is so ordered.

Collier, Hamilton, and Bantz, JJ., concur.