Samuel H. Hoestadter, J.
The plaintiff in September, 1949, leased from the defendant the front portion of the third floor loft in the premises 153 East 42nd Street, Manhattan, city of New York, and has been in continuous occupancy ever since. The first lease ran from September 26, 1949 to September 30, 1951, at a rent of $85 a month, though a reasonable rent fixing agreement stated that the emergency rent was then $45 a month. A renewal lease was entered into in September, 1951 for five years from October 1, 1951, at an increased graduated rent; in exercise of an option to terminate this renewal lease, the defendant by written notice given in October, 1953 terminated the lease as of December 31, 1953, since which date the plaintiff has been and now is in possession as a statutory tenant.
The plaintiff conducts a barbershop in the leased premises. The defendant’s president and sole stockholder Fred Sellmann negotiated the original and renewal leases and the plaintiff’s dealings were solely with him. Fred Sellmann died on July 14, 1955 and, so far as the record discloses, the relations between the parties during Mr. Sellmann’s lifetime were harmonious.
The lease contained the stereotyped clause requiring the tenant to obtain the landlord’s written consent to the placing of any sign. The building is an old walk-up building; on the first floor or street level is a restaurant operated by the de *615 fendant, the lessee of the entire building. To the west of the restaurant is a door with a glass insert, which opens on a small vestibule, leading directly to two narrow flights of stairs, walled in on both sides. At the head of the stairway on both the second and third floors is a small landing or platform.
Because the plaintiff’s barbershop was on the third floor and needed street floor publicity to inform passers-by and prospective patrons of its presence in the building, it was agreed, between the plaintiff and Mr. Sellmann that the plaintiff be permitted to place a barber pole with a sign below it on the outside wall, at the street level. It was agreed that the plaintiff have the further right to install a large illuminated sign on the third floor landing, clearly visible as soon as a customer entered the door at the street level. Immediately after the execution of the original lease in September, 1949 and before the opening of the barbershop for business the plaintiff installed both the pole and sign on the outer wall at the street level and the sign on the third floor, illuminated by a fluorescent tube, The installation of both these devices took place under the personal supervision of Mr. Sellmann and was with the defendant’s complete affirmative consent. The sign on the third floor remained there ever since it was installed until physically removed by the defendant on February 12, 1957 on the instructions of Mr. Sellmann’s widow, who has succeeded him as president and sole stockholder. As soon as the plaintiff learned of this he immediately protested in writing.
In 1952 the defendant altered the front of the building; before doing so, Mr. Sellmann agreed with the plaintiff that the street level pole and sign be removed and be replaced by a lettered sign on the lower half of glass entrance door, directing attention to the barbershop upstairs. This agreement was carried out by Mr. Sellmann and the legend on the glass door remained there throughout his lifetime and for some time thereafter. Some months ago the glass of the door cracked, and new glass was put in; the plaintiff reimbursed the defendant for the cost of the new glass. Instead, however, of restoring the lettering indicating the barbershop the defendant has placed on the upper half of the door a sign with an arrow calling attention to its own restaurant. The lower half of the glass door is bare.
Since January, 1957, the defendant has also allowed empty garbage cans to remain on the street landing within the entrance leading to the stairway to the upper floors during the early morning hours, after the plaintiff’s barbershop is already open for business. These garbage cans, though empty, nevertheless emit offensive odors and obstruct both the entrance and the *616 stairway and thus not alone make it difficult for the plaintiff’s customers to mount the stairs without touching the cans and soiling their clothes, but subject them to needless discomfort. The necessary effect of these conditions cannot be otherwise than to discourage patronage of the plaintiff’s establishment. They constitute a direct and substantial interference with the plaintiff’s right as a tenant to ingress and egress. (See Anixter v. Bangor Realty Corp., 104 Misc. 613.)
The plaintiff paid the rent due for all months prior to and including February, 1957 and otherwise complied with all the terms of his tenancy. For some months before the commission of the acts which have given rise to this action the defendant had through Mrs. Sellmann sought to obtain a very much higher rent from the plaintiff. In fact, under date of January 18, 1957 the defendant gave the plaintiff notice of its intention to take possession of the plaintiff’s premises. It is clear that the defendant’s acts were part of a deliberate campaign to make the plaintiff capitulate to its terms or to render the plaintiff’s occupancy so unbearable as to compel him to vacate the store. The third-floor sign did not and could not harm the defendant in any way. The defendant’s conduct of its restaurant without the door sign ever since the front of the building was changed in 1952 persuades me completely that its assertion on the trial that the sign is needed to avoid confusion with the adjoining restaurant is a mere subterfuge. I reject this attempted explanation. Equally without substance is its contention that it is unable to find any other method for the handling of the garbage cans; it seems to have found the present objectionable course necessary only in recent months, since the dispute over the plaintiff’s rent. Its purpose thus becomes self-evident.
The proof establishes what must be obvious in any case that the removal of the signs causes a serious and material loss to the plaintiff’s business and that he cannot conduct his barbershop successfully unless they are restored. The damaging effect of the conditions produced by the garbage cans in the entrance vestibule is also demonstrated. Adequate relief can be given only in equity.
The defendant’s main contention is that because the plaintiff did not receive written permission to maintain the signs as provided in the lease he has nothing but a revocable license. The proof of the defendant’s complete consent to the installation and maintenance of the signs is conclusive. The third-floor sign and the street-floor pole and sign were there when the defendant made the renewal lease in 1951.
*617 In the circumstances there has been an effective waiver of the lease provision and the defendant is now estopped from invoking it. (Sol Apfel, Inc. v. Kocher, 61 N. Y. S. 2d 508, affd. 272 App. Div. 758; Adams-Flanigan Co. v. Kling, 198 App. Div. 717, affd. 234 N. Y. 497.)
The signs are an essential incident of the plaintiff’s enjoyment of the demised premises; the conduct of a barbershop without signs is an anomaly. They are as vital as the name of a tenant on the directory in the lobby of an office building. Such items form an indispensable element of the tenancy and are in effect part of the premises. (See, also, Levin v. Rose, 302 Mass. 378.) The history of the present tenancy forbids the withholding by the defendant of these vital incidents.
Accordingly the defendant is directed to restore the sign on the third floor to its former position or to permit the plaintiff to do so; also to restore on the lower half of the entrance door the legend and sign referring to the plaintiff’s barbershop as it existed previously or to permit the plaintiff to do so. The reference to the defendant’s restaurant on the upper half of the door may remain. The defendant shall not have any garbage cans in the entrance hallway or vestibule on any day after 7:30 a.m. Should the defendant elect to permit the plaintiff to restore the signs instead of doing so itself, which election is to be indicated on the settlement of the judgment, the defendant shall bear the reasonable cost of the restoration. The foregoing constitutes the court’s decision pursuant to section 440 of the Civil Practice Act. Settle judgment.