624 P.2d 507

**WAL-GO ASSOCIATES,**
**Plaintiff-Appellant,**

v.

**Reyes LEON and Catherine Leon, his wife, Defendants-Appellees.**

**No. 13121.**

Supreme Court of New Mexico.

Feb. 13, 1981.

Rehearing Denied March 9, 1981.

Durrett, Conway & Jordan, Wayne Jordan, Alamogordo, Brown, Koralchik & Fingersh, Jim F. Davis, Kansas City, Mo., for plaintiff-appellant.

Payne & Mitchell, Gary C. Mitchell, Ruidoso, Albert J. Rivera, Alamogordo, for defendants-appellees.

## OPINION

FEDERICI, Justice.

Appellant (lessor) brought suit in the Magistrate Court of Otero County for forcible entry and unlawful detainer, sections 35-10-1 to 35-10-6, N.M.S.A.1978 (F.E. U.D. statutes), to regain possession of premises leased to appellees (lessees). The magistrate court found for lessees. Lessor appealed to the district court. On de novo review, the district court also found for lessees. Lessor appeals. We affirm.

In June of 1974, lessees entered into a five-year lease of certain commercial property in a shopping center with lessor's predecessor in interest. The lease requires lessees to pay lessor rent by the 15th of each month, in advance. It also contains an option for the lessees to renew the lease in 1979 for another five years, a right of possession clause in favor of the lessor in the event the lessees default, and a clause to the effect that failure to operate the convenience store on the premises for seven days constitutes a major breach of the lease, giving the lessor the right of re-entry.

When lessees executed the original lease with lessor's predecessor, they also received a special warranty deed to an undeveloped piece of property in the shopping center. The deed provides that lessees will obtain merchantable title to the fee property upon successful completion of the initial five-year term of the lease upon the demised property. The shopping center is located in an area to the northwest of the intersection of Highway 54/70 and another street in Alamogordo. The leased property and the fee property are separated from each other by several yards of open area. This open area was owned by lessor or its predecessors in title during the entire term of the lease until June 10, 1979, when lessor sold it to T.I.M., Inc.

Paragraph 7 of the lease states:

The common area portions of the Shopping Center shall be for the joint use of all tenants in the Shopping Center, their

customers, invitees and employees, and Landlord hereby grants to Tenant, and its customers, invitees and employees, the nonexclusive right of use of all of the common areas as the same may from time to time exist.

Shortly after the lease began, lessees placed gas pumps and storage tanks on the fee property. Customers who purchased gas paid for it at the convenience store. They obtained access to both pumps and the convenience store through the open areas of the shopping center. Neither lessor nor its predecessors ever objected to this arrangement. In fact, there is some evidence that one of the lessor's predecessors was at least peripherally involved with the initial negotiations to set up the gas pumps.

In April of 1979, lessor and lessees conducted negotiations concerning trading the leased property and the fee property for other property. They were unable to agree, and negotiations ceased on about June 3. On June 13, lessees mailed the coming month's payment to lessor, along with a notice of intent to renew the lease for an additional five years. The check was marked "insufficient funds" by lessees' bank on June 25, and the bank notified lessees of this. On June 29, lessor, its agents or assigns, built a barricade around the fee property on all sides except the east side which bordered the highway, effectively blocking the gas pumps off from access by vehicles as well as interfering with access between the gas pumps and the convenience store. On the same date lessees called lessor and complained about the barricade. During the telephone conversation, lessees informed lessor that their bank had not honored the check, and to send it back through. Lessor received written notice of the insufficient fund status of the check from the depository bank on July 10. Lessor sent lessees a notice of default on July 20, which was received on July 22. No demand for payment was ever made. Payment was not made until the time of trial, though lessees were ready, willing and able to make payment at all times beginning July 10. Lessees did make payments for subsequent months and lessor accepted the payments,

notifying lessees that lessor was denominating the payments as "damages" rather than rent. The complaint was filed in August. In September, lessees closed the convenience store for ten days immediately prior to the trial.

The district court found for lessees essentially on two grounds: (1) lessees were entitled to raise affirmative and equitable defenses to lessor's complaint under the F.E.U.D. statutes, and equity should allow them to prevail; and (2) lessor waived forfeiture by accepting subsequent lease payments. We discuss the first ground.

Lessor argues that equitable defenses are not available under our F.E.U.D. statutes. Section 35–10–1 reads:

A. A civil action for forcible entry or unlawful detainer of real property is commenced by the filing of a civil complaint alleging that one or more of the following facts exists:

\* \* \* \* \* \*

(2) the defendant holds over after the termination, or contrary to the terms of, his lease or tenancy;

(3) the defendant fails to pay rent at the time stipulated for payment.

Section 35–10–3 reads:

A. [T]hree days' notice in writing to quit must be given to the defendant before a civil action for forcible entry or unlawful detainer may be filed.

\* \* \* \* \* \*

C. The questions of title or boundaries of land shall not be investigated in an action for forcible entry or unlawful detainer, *but the action does not prevent a party from testing the right of property in any other manner.* An action for forcible entry or unlawful detainer may not be brought in connection with any other action, nor may it be made the subject of setoff. (Emphasis added.)

Lessor contends that all he must show under these statutes are: (1) nonpayment of rent; (2) notice of default; and (3) failure to vacate the premises. He alleges that failure to comply with the lease require-

ment to keep the business open constitutes an additional ground. Once he has made a prima facie showing of these requirements, he is entitled to judgment; the court cannot consider equitable defenses the lessees may raise.

■■■ We agree that an action for forcible entry or unlawful detainer is summary and does not settle issues of title or absolute right of possession between the parties. *Ott v. Keller*, 90 N.M. 1, 558 P.2d 613 (Ct. App.1976). Those matters are left for other proceedings. However, we read Section 35–10–3(C) to allow any defense to be raised that does not try title or boundaries to the disputed property. In the proceeding here, the lessees have not raised issues of title through their affirmative defenses. Rather, the issues they raise involve whether there has been unlawful detainer. Equitable defenses, as well as legal defenses, may be litigated to resolve this.

Here, if the lease contract is terminated, it will work a forfeiture of property to which lessees will obtain legal title upon successful completion of the lease agreement. The effect would be to deprive an equitable owner of his title to the property. Our Court of Appeals considered equitable claims in this type of situation in *Ott v. Keller, supra*, and we agree that they should be considered because of our interpretation of the statute and because equitable defenses may generally be raised when there is a possibility of forfeiture of equitable title. *See Melfi v. Goodman*, 73 N.M. 320, 388 P.2d 50 (1963).

■■■ Here, the evidence before the court was that lessees had paid the June, 1979 rent by check, on time. However, the check was marked "insufficient funds" by the payor bank on June 25. This may have placed lessees in breach of the agreement, though there was evidence before the trial court that lessor's policy was to always redeposit checks which had been marked "insufficient funds." This apparently took place on a previous check from lessees, in April of 1979. It is well-established that a course of dealing may modify an agreement. *See Terrel v. Duke City Lumber*

*Company, Inc.*, 86 N.M. 405, 524 P.2d 1021 (1974), *modified*, 88 N.M. 299, 540 P.2d 229 (1975). Lessor was not notified of the insufficient funds by lessees until after lessor had begun construction of the barricade. The trial court concluded that "Plaintiff, through its actions, has also breached the lease and effected a breach of said lease by defendants." We take this conclusion to mean that due to previous course of dealing, lessees had not breached the agreement on the date lessor barricaded the fee property, though they did subsequently. Since lessor's breach effected lessees' breach, lessor cannot now claim that lessees unlawfully detained the premises.

Lessor claims that his actions do not constitute a breach. It has been held by other courts that interference with a tenant's right of ingress and egress is actionable. *Davis v. Blum's, Inc.*, 223 Ga. 790, 158 S.E.2d 410 (1967); *Walgreen Co. v. American Nat. B. & T. Co. of Chicago*, 4 Ill.App.3d 549, 281 N.E.2d 462 (1972); *Survey v. H. F. Sellmann*, 6 Misc.2d 614, 164 N.Y.S.2d 87 (1957). In *Walgreen*, the lessor constructed a building in a common area of use by lessees. The lease provisions concerning the common area were similar to those in the present lease. The infringement of Walgreen's rights of ingress and egress were minimal. Yet the court found that Walgreen's was granted an easement over the area, and for parking, and the lessor was required to remove the structure.

In *Surrey*, it was apparent that the lessor was interfering with the tenant's rights of ingress and egress by placing garbage cans near the entrance of the tenement. Lessor's predecessor consented to lessees' placing signs outside the tenement advertising the business. Lessor later removed the sings. It became apparent at trial that lessor had been attempting for some time to raise the rent. Lessor's acts were found to be part of a deliberate campaign to make the lessee capitulate to the increased rent, or, in the alternative, to vacate the premises. The court found that the signs were an essential incident of the lessee's enjoyment of the demised premises. As an indispens-

able element of the tenancy, they were, in effect, incidents of the premises, and the right to have them could not be withheld.

■ These cases are similar to the one before us. Here, there was a grant of the use of the common area. Lessees and their customers used the area between the convenience store and the gas pumps for five years as a common area without objection by lessor or its predecessors. They also used the area of the shopping center between the shopping center entrances and the gas pumps. Immediately prior to erection of the barricade, lessor tried to negotiate an agreement to move lessees to another area, but the negotiations broke down. Erection of the barricade may well have been nothing more than an attempt to make lessees capitulate to lessor's desires to move them to another location. We hold that lessor's actions in erecting a barricade around the fee property constitutes a breach of the agreement between the parties.

Lessor raises several issues concerning substantial evidence. We have reviewed the record and find substantial evidence to support the trial court's findings on the issues discussed herein.

The trial court properly considered the equitable claims in this matter. It was proper for the trial court to find that lessor breached the lease, and that under those circumstances there was no unlawful detainer by lessees.

Since these matters alone are sufficient to affirm the trial court, we will not discuss other issues raised by lessor. The trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.