2002-NMCA-003

38 P.3d 891

**ENVIRONMENTAL CONTROL, INC., Plaintiff–Appellant,**

v.

**CITY OF SANTA FE, a municipal subdivision, Ron Curry, individually and as City Manager of the City of Santa Fe, Cindy Padilla–Cessarich, individually and as Director of the Solid Waste Management Division, Defendants–Appellees.**

**No. 20,549.**

Court of Appeals of New Mexico.

Nov. 21, 2001.

Certiorari Denied, No. 27,263, Jan. 7, 2002.

Mariana G. Geer, Randolph B. Felker, Felker, Ish, Ritchie & Geer, P.A., Santa Fe, NM, for Appellant.

Carl J. Butkus, Gary J. Cade, Butkus, Gay & Jahner, P.C., Albuquerque, NM, Peter Dwyer, Santa Fe, NM, for Appellees.

Randall D. Van Vleck, Santa Fe, NM, for Amicus Curiae New Mexico Municipal League, Inc.

## OPINION

CASTILLO, Judge.

{1} Environmental Control, Inc. (ECI) appeals the dismissal of its complaint against the City of Santa Fe (the City) and two of its employees challenging an ordinance that prohibits commercial collection of all garbage within the city limits. We affirm.

## BACKGROUND

{2} ECI is a refuse collection disposal company headquartered in Santa Fe, New Mexico. ECI and its predecessors-in-interest have collected refuse within the City for approximately twenty-four years. From at least the early 1980s, the City divided its solid waste into two categories: Class 1 and Class 2 garbage. It reserved unto itself the exclusive right to gather and collect Class 1 garbage and allowed commercial collection of some types of Class 2 garbage.

{3} ECI first filed suit against the City in 1984 when the City originally proposed to amend its garbage ordinance to eliminate commercial collection of Class 2 garbage. ECI's predecessor-in-interest sought a restraining order to prevent the implementation of the ordinance and was granted a preliminary injunction. Litigation ensued and finally, in 1989, the parties entered into a settlement agreement (Settlement Agreement) containing a number of provisions, one of which allowed ECI to engage in the collection of all classes of garbage including Class 2 for a minimum of four years. ECI no longer collects Class 1 garbage but continues to collect Class 2 garbage. In 1993 ECI and Allied Waste Industries, Inc. merged. Prior to the consummation of the sale, the parties requested and received approval for the merger as required by the Settlement Agreement.

{4} In 1996 the City passed two ordinances relating to its refuse disposal system. The first authorized the issuance of revenue bonds (bond ordinance). During the discussion at the August 14, 1996, council meeting at which the bond ordinance was passed, ECI's operating general manager asked about the effect of the bond ordinance language on ECI's hauling of Class 2 garbage. The city staff told him that the bond covenant language would not prohibit ECI from hauling Class 2 garbage. Four months after passage of the bond ordinance, the City published notice of its intent to adopt a second ordinance, the 1996 Solid Waste Ordinance. This ordinance removed any distinction between classes of garbage thereby prohibiting private hauling of Class 2 garbage within the city limits. ECI did not attend the meeting at which the ordinance was passed because it contends the City did not give ECI individual notice, and it was unaware that the City was considering an ordinance that would eliminate the commercial collection of Class 2 garbage. In early 1997 the City informed ECI that effective April 1, ECI would no longer be permitted to collect Class 2 garbage within the city limits. Shortly thereafter, Councillor Montano asked that an amendment to the 1996 Solid Waste Ordinance be drafted to allow private hauling of Class 2 garbage but withdrew his request at the same meeting because of procedural problems. No similar amendment was ever considered by the city council.

{5} ECI objected to the 1996 Solid Waste Ordinance and filed suit against the City for civil rights violations pursuant to 42 U.S.C. § 1983 (Count I), breach of contract (Count II), breach of covenant of good faith and fair dealing (Count III), inverse condemnation (Count IV), and estoppel (Count V). ECI's position is that it should be able to continue collecting Class 2 garbage or to be compensated for the taking of its business. The City responded by filing motions to dismiss. Relying primarily on the language and effect of the Settlement Agreement, the district court granted the City's motions and dismissed the case. We affirm.

## DISCUSSION

### I. Standard of Review

{6} In reviewing a motion to dismiss for failure to state a claim under Rule 1–012(B)(6) NMRA 2001, we take the well-pleaded facts alleged in the complaint as true and test the legal sufficiency of the claims. *Blea v. City of Espanola,* 117 N.M. 217, 218, 870 P.2d 755, 756 (Ct.App.1994); *Envtl. Improvement Div. v. Aguayo,* 99 N.M. 497, 499, 660 P.2d 587, 589 (1983). We review rulings on such motions de novo, accepting all well-pled factual allegations as true and resolving all doubts in favor of the sufficiency of the complaint. *Wallis v. Smith,* 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682. Under this standard of review only the law applicable to such a claim is tested, not the facts which support it. *Envtl. Improvement Div.,* 99 N.M. at 499, 660 P.2d at 589. Because the Settlement Agreement provides the principal

basis for the decision in this case, first we will review its terms and then we will address ECI's arguments.

## II. 1989 Settlement Agreement

{7} ECI attached a copy of the Settlement Agreement to the complaint as Exhibit B. At the core of the Settlement Agreement is language permitting ECI to collect all classes of garbage as defined in the city's ordinance for a minimum period of four years from the date this lawsuit is dismissed. The lawsuit was dismissed in April 1990. ECI and Robert Haspel, its sole shareholder, were required to obtain approval by the City for any sale, transfer, or alienation of the majority ownership and control of ECI. The City, without admitting any liability, agreed to pay ECI and Haspel $100,000. In addition, the Settlement Agreement authorized the City to "enact whatever ordinances or regulations its legal counsel determines are necessary to put the terms and conditions of [the] agreement into effect." There are other terms regarding a number of requirements not germane to this appeal. ECI correctly states that the Settlement Agreement does not contain express provisions specifying a maximum term, a termination date for the agreement, or a specific method of termination. As to the ordinances in question, ECI acknowledges in its brief in chief that the 1984 ordinance had "exactly the purpose and effect" as the 1996 Solid Waste Ordinance which is the subject of the present lawsuit.

## III. Constitutional Arguments (Count I and Count IV)

{8} ECI makes three basic constitutional claims in Counts I and IV of its complaint. In urging reversal, ECI first argues that the City has taken its property, specifically ECI's customers and the revenues they generate, without just compensation. U.S. Const. amend. V, XIV, XV; N.M. Const. art. II, § 20; 42 U.S.C. § 1983 (1996). In the alternative, ECI argues that the City has effectively condemned its property thus, entitling ECI to damages. N.M. Const. art. II, § 20; NMSA 1978, §§ 42–8–1 to –29 (1907, as amended through 1975). ECI also asserts that its Fourteenth Amendment due process

rights were violated: it claims a violation of substantive process rights because the Solid Waste Ordinance, to the extent it eliminates the private hauling of Class 2 garbage, is arbitrary and capricious and is not a valid exercise of police power; it claims a violation of procedural due process rights because passage of the 1996 Solid Waste Ordinance deprived it of property without notice and opportunity to be heard. U.S. Const. amend. XIV; N.M. Const. art. II, § 18.

{9} All of ECI's constitutional arguments are dependent on a determination that the operation of its garbage collection business within the city limits is considered property for purposes of constitutional analysis. Recognizing this essential nexus, ECI cites to a number of out-of-state cases standing for the proposition that an interest in a business and the revenues it generates are property to which constitutional protections apply. *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 11, 15–16, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (concluding that governmental taking of Laundry's trade routes, e.g., customer lists and continued patronage, required just compensation); *Young v. Bd. of Pharmacy*, 81 N.M. 5, 9, 462 P.2d 139, 143 (1969) (recognizing that right to engage in a profession or business is a constitutionally protected property interest); *Roberts v. Bd. of Embalmers & Funeral Directors*, 78 N.M. 536, 538, 434 P.2d 61, 63 (1967) (stating that the right to practice a profession or vocation is a property right); *State of Texas v. Thompson*, 70 F.3d 390, 392–93 (5th Cir. 1995) (determining that plaintiff had a property interest in operation of aerial applicator business cognizable in a Section 1983 claim); *Cowan v. Corley*, 814 F.2d 223, 227–28 (5th Cir.1987) (holding that an operator of a wrecker business had a protectable property interest in his business); *Coeur D'Alene Garbage Serv. v. City of Coeur D'Alene*, 114 Idaho 588, 759 P.2d 879, 882 (1988) (holding that the city's elimination and usurpation of the garbage company's customers was a taking, entitling the garbage company to just compensation).

{10} While ECI's general statement of the law is correct, it fails to recognize that its right to continue operating a garbage

collection business within the City is subject to the terms of the Settlement Agreement, thus, distinguishing it from the cases cited. ECI's right to collect all types of garbage within the City expired in April 1994, at the conclusion of "a minimum period of four years" from the dismissal of the lawsuit against the City. After that time, ECI had no vested, legally enforceable interest to continue business.

{11} Because ECI's right to continue its business after April 1994 was terminable at the option of the City, ECI possessed no enforceable legal right to perform garbage collection services indefinitely. Therefore, the expectation that ECI could continue to collect garbage was not a right cognizable under the takings clause, inverse condemnation clause, or due process clause of either constitution. *See Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (stating that an "abstract need for, or unilateral expectation of," some benefits does not constitute " 'property [interests]' " of the type protected by the due process clause); *see also State ex rel. Highway Comm'n v. Gray*, 81 N.M. 399, 402, 467 P.2d 725, 728 (1970) (expecting renewal or continuing possession of lease does not entitle a party to compensation). Having decided that ECI has no property interest protected by either the state or federal constitution, we need not reach ECI's claims that its due process rights were substantively or procedurally violated. Dismissal of Counts I and IV was proper.

## IV. Breach of Contract (Count II)

{12} In Count II of its complaint, ECI alleges that the City breached the terms of the Settlement Agreement by terminating its business contrary to an implied agreement that would have allowed ECI to continue to collect Class 2 garbage for the duration of the bond ordinance. While ECI recognizes that the Settlement Agreement is a valid contract that resolved the parties' dispute in 1984, it takes issue with the court's interpretation of the agreement. Its arguments fall into two categories: ambiguity of the contract and its modification.

## A. Ambiguity

{13} ECI asserts that the term "minimum" is ambiguous and, therefore, the district court must hear evidence to determine the duration of the Settlement Agreement. ECI contends the district court erred in failing to consider the testimony of Haspel who testified at the preliminary injunction hearing that the four years referenced in the Settlement Agreement was only a minimum term and that he would not have settled the prior litigation in exchange for an agreement that would end in four years. We find ECI's arguments without merit because there is nothing in this part of the Settlement Agreement that is ambiguous as a matter of law.

{14} A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. *Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). Whether ambiguity exists is a question of law; therefore, this Court reviews the district court's decision de novo. *See Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 28, 127 N.M. 1, 976 P.2d 1. We agree with the district court that the word "minimum" as used in the Settlement Agreement does not make the agreement ambiguous. The Settlement Agreement sets out the rights and obligations of the parties. ECI was guaranteed a minimum of four years of garbage collection after which the City was free to establish limitations or continue to allow ECI to operate. The City chose not to enact an ordinance limiting ECI's right to collect Class 2 garbage until late 1996, well over two years past the minimum guarantee period. The City complied with the terms of the Settlement Agreement. Once the four-year minimum was met, the terms of the Settlement Agreement allowed the City to decide when and how to limit ECI's garbage collection rights.

{15} Having determined that the Settlement Agreement is unambiguous, there is no need to consider the testimony of Haspel. A party's statement of unilateral subjective intent, without more, is insufficient to establish ambiguity in light of clear contractual language. *Hansen v. Ford Motor Co.*, 120 N.M. 203, 206, 900 P.2d 952, 955 (1995).

As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions do not create ambiguity. *Hoggard v. City of Carlsbad*, 1996–NMCA–003, ¶ 15, 121 N.M. 166, 909 P.2d 726; *see Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) ("It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties."); *see also Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) ("Absent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted.").

### B. Modification

{16} ECI cites to *Wal–Go Associates v. Leon*, 95 N.M. 565, 624 P.2d 507 (1981) and *Medina v. Sunstate Realty, Inc.*, 119 N.M. 136, 889 P.2d 171 (1995) to support its claim that the City, by its conduct, amended or modified the Settlement Agreement to permit ECI to continue collecting Class 2 garbage until at least the expiration of the bond ordinance. ECI relies specifically on the City's assurances made on August 14, 1996, that the bond ordinance would not affect ECI's business. We disagree.

{17} Normally, interpretation of the parties' conduct is a question of fact in which the meaning depends on reasonable but conflicting inferences to be drawn from events occurring, or circumstances existing, before, during, or after negotiation of the contract. *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991). When the allegations regarding the conduct are not in dispute and are not susceptible of conflicting inferences, the question becomes one of law. *Id.* at 511, 817 P.2d at 239. In this case, the City does not deny that it assured ECI the bond ordinance would not affect its business. The City was correct. It was not the bond ordinance that affected ECI's business but rather the subsequent passage of the 1996 Solid Waste Ordinance that prohibited the commercial collection of Class 2 garbage.

{18} ECI argues that because the City intended to use any additional income produced by the City's collection of Class 2 garbage to pay off the bonds, passage of the bond ordinance did affect ECI's business. Even if we take ECI's allegations as true, no reasonable person could conclude that, when city councillors discussed the effect of the bond ordinance on ECI's business, the City was implicitly amending the 1989 Settlement Agreement. Municipal governing bodies discuss ordinances on a regular basis; they pass, amend and repeal ordinances on a regular basis. It would defy logic to hold that the discussion of the effect of one ordinance should prevent the passage of a subsequent ordinance. Even if ECI's allegations regarding comments by some councillors were true, there was no official action taken that would be legally binding on the City. *See Trujillo v. Gonzales*, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) (holding that no liability created by unlawful contract, even if entered in good faith). ECI is deemed to have known this. "[P]ersons dealing with public officials are chargeable with notice of limitations on their powers." *Id.* (citing *Raton Waterworks Co. v. Town of Raton*, 9 N.M. 70, 90–91, 49 P. 898, 905 (1897)).

{19} Consequently, we hold that as a matter of law, the Settlement Agreement was not modified by the discussion at the August 14, 1996, council meeting and that the City had the right to exercise its rights under the Settlement Agreement by passage of the 1996 Solid Waste Ordinance. Public policy encourages settlement agreements, and the courts have a duty to enforce them. *Bd. of Educ. v. Dep't of Pub. Educ.*, 1999–NMCA–156, ¶ 14, 128 N.M. 398, 993 P.2d 112. An agreement of settlement cannot be set aside merely because in light of subsequent events it proves to have been unwise or unfortunate. *In re Tocci*, 45 N.M. 133, 142, 112 P.2d 515, 521 (1941).

### V. Breach of Implied Covenant of Good Faith (Count III)

{20} Count III of ECI's complaint alleges that the City's conduct breached the implied covenant of good faith and fair dealing implicit in the 1989 Settlement Agreement. Specifically, ECI contends that it was

bad faith for the City to assure ECI that its business would not be affected by the bond ordinance and then only a few months later pass the 1996 Solid Waste Ordinance which effectively eliminated ECI's business. ECI also complains that notice by publication was inadequate and that the City had the obligation to give it individual notice that passage of the 1996 Solid Waste Ordinance was being contemplated and an opportunity to be heard on the subject. ECI relies on *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994), for the proposition that " '[the] concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of other[s] ... to receive the benefit of their agreement.' " (Citation omitted.)

{21} We agree that a covenant of good faith and fair dealing can be imputed to the Settlement Agreement. However, the Settlement Agreement did not require the City to give any type of notice before exercising its prerogative to terminate ECI's right to collect Class 2 garbage. ECI received the benefit of its agreement that it was allowed to collect Class 2 garbage for more than the minimum four-year period. ECI asks us to imply a covenant of good faith and fair dealing to prevent the City from exercising its own rights that are either explicit or implicit in the Settlement Agreement; namely, the right unilaterally to terminate ECI's garbage collection, after the minimum four-year period, whenever and however the City chose to do so. This would rewrite the Settlement Agreement. *Cont'l Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 704–05, 707, 858 P.2d 66, 80–81, 83 (1993) (holding that an implied covenant will not override an express provision of a contract). Accordingly, the district court was correct in dismissing Count III. Even if the facts as pled in the complaint were true, there is no good faith requirement that would prevent the City from exercising its rights under the Settlement Agreement.

## VI. Estoppel (Count V)

{22} ECI argues that the district court erred in dismissing Count V of its complaint alleging equitable estoppel. Estoppel is rarely applied against the state or its governmental entities, and only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it. *Wisznia v. Human Serv. Dep't*, 1998–NMSC–011, ¶ 17, 125 N.M. 140, 958 P.2d 98. The district court dismissed Count V because it determined that "exceptional circumstances do not exist showing a shocking degree of aggravated and overreaching conduct and concepts of right and justice do not support the application of estoppel" against the City. We need not address whether circumstances support the application of equitable estoppel to the City because ECI's complaint does not properly plead the elements of equitable estoppel.

{23} "[E]stoppel is the preclusion, by acts or conduct, from asserting a right ... to the detriment and prejudice of another, who, in reliance on such acts and conduct, has acted thereon." *Brown v. Taylor*, 120 N.M. 302, 305, 901 P.2d 720, 723 (1995) (internal quotations omitted) (citations omitted). We focus on the acts of ECI. In order to properly plead a claim for equitable estoppel, the party claiming estoppel must assert that in reliance on the conduct of the party to be estopped, it was induced to take or forgo a position to its prejudice or detriment. *See Cont'l Potash, Inc.*, 115 N.M. at 698, 858 P.2d at 74. ECI alleges three acts by the City on which it detrimentally relied: the assurances of City staff that the bond ordinance would not affect its continued collection of Class 2 garbage; the comments of Councillor Montano and his attempt to amend the Solid Waste Ordinance to allow ECI to continue in business; and the fact that in 1993, the City had approved the stock merger of ECI with Allied Waste Industries, Inc. ECI, however, does not allege a change in position based on the acts of the City. ECI was collecting Class 2 garbage as per the Settlement Agreement before any of the three acts occurred, and ECI continued to collect Class 2 garbage after the actions of the City. There was no actual change in position. A party must plead circumstances giving rise to estoppel with particularity. *Id.* Failure to show a material change in position precludes application of equitable estoppel. *Dale J. Bellamah Corp. v. City of Santa Fe*,

88 N.M. 288, 291, 540 P.2d 218, 221 (1975) (showing no change in position after ordinance took effect, plaintiff could not invoke equitable estoppel); *Tome Land & Improvement Co. v. Silva*, 83 N.M. 549, 554, 494 P.2d 962, 967 (1972) (failing to change position or to rely to their detriment on the board's action resulted in meritless assertion of estoppel by appellants); *Porter v. Butte Farmers Mut. Ins. Co.*, 68 N.M. 175, 181, 360 P.2d 372, 376 (1961) (deciding that plaintiffs did not change their position after comments by a member of the board of directors eliminated plaintiffs from a valid equitable estoppel claim). Because ECI did not allege it took any action based on the actions of the City, we hold that ECI's complaint is legally insufficient to support a claim for equitable estoppel.

**CONCLUSION**

{24} For the foregoing reasons, we affirm the decision of the district court to dismiss ECI's complaint with prejudice.

{25} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and A. JOSEPH ALARID, Judge.