This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date:

**NO. 31,200**

**PUBLIC SERVICE COMPANY OF NEW MEXICO**,

Appellant,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION**,

Appellee,

and

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS (IBEW), WESTERN RESOURCE ADVOCATES (WRA), COALITION FOR CLEAN AFFORDABLE ENERGY (CCAE), KROGER, CO., BOARD OF REGENTS OF UNM (UNM), COMMUNITY ACTION NM AND SENIOR INTERVENORS (CANM/SI), NM INDUSTRIAL ENERGY CONSUMERS (NMIEC), AND OFFICE OF THE ATTORNEY GENERAL**,

Intervenors.

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Patrick T. Ortiz
Benjamin Phillips
Albuquerque, NM

Miller Stratvert, P.A.
Robert H. Clark
Brian J. Haverly
Albuquerque, NM

for Appellant

Robert Y. Hirasuna
David P. Barton
Santa Fe, NM

for Appellee

Law Office of Justin Lesky
Justin Lesky, Jr.
Albuquerque, NM

Steven S. Michel
Santa Fe, NM

Senior Citizen's Law Office
Micah Rose
Angelica Anaya Allen
Albuquerque, NM

Comeau, Maldegen, Templeman & Indall, L.L.P.

William P. Templeman
Santa Fe, NM

Bruce C. Throne
Santa Fe, NM


Peter J. Gould
Santa Fe, NM

Gary K. King, Attorney General
Jeffery S. Taylor, Assistant Attorney General
Santa Fe, NM

for Intervenors

## DECISION

**BOSSON, Justice.**

{1}     Public Service Company of New Mexico (PNM) appeals from a Final Order of the Public Regulatory Commission (PRC) granting PNM a rate increase but rejecting certain increases requested by PNM related to decommissioning costs associated with restoring certain coal mine sites. We affirm the Final Order of the PRC.

**BACKGROUND**

{2}     In 2001, negotiations began between PNM, PRC, and several other parties regarding retail electric rates, resulting in the adoption of a Stipulated Agreement in 2003. In the Stipulated Agreement, PRC authorized PNM to recover "up to" $100 million out of a projected $113 million in decommissioning costs associated with

restoring coal mine sites adjacent to its San Juan and Four Corners plants. These costs were to be amortized over a 17-year period.

{3}     The 2003 Stipulated Agreement states:

> PNM shall be authorized to recover in these Stipulated Rates [i.e., the rates approved in Case 3137] and future retail rates its New Mexico jurisdictional share of the decommissioning costs associated with the San Juan, La Plata and Navajo Surface Coal Mines as shown on Attachment B. **PNM shall be authorized to recover up to $100 million of the costs** shown on Attachment B, comprised of approximately $69 million in surface coal mine reclamation costs . . . and approximately $31 million of contract buyout costs . . . .

{4}     On February 21, 2007, PNM filed the present rate case with PRC seeking to recover, among other things, an additional $77.3 million for decommissioning costs at its San Juan and Four Corners plants. PNM argued that the increase was justified based on updated projections for its reclamation costs at these plants. Based on the review of a hired consultant and the analysis of a mining consultant, PNM projected that its actual decommissioning costs would be $158.3 million for the two plants, a substantial increase from its original projection of $113 million. PNM sought to recover $39.6 million of these increased costs from its retail ratepayers through a rate increase. PNM proposed that the effects of the additional costs could be mitigated by extending the San Juan amortization schedule to 33 years while reducing the Four Corners amortization schedule to 15 years. PNM also sought to recover an additional $31.2 million in decommissioning expenses that it had already incurred in excess of

the amount approved by the Stipulated Agreement for its San Juan mines.

{5}    Following statutory procedure, PRC assigned the case to a hearing examiner. *See* NMSA 1978, § 62-8-7(C) (2007).  Extensive discovery followed, and after two weeks of hearings, the hearing examiner issued a Recommended Decision on March 6, 2008.  PNM and others filed exceptions to the Recommended Decision, and on April 24, PRC issued a revised Final Order Partially Adopting Recommended Decision.  PRC then issued its Final Order on May 1, 2008, which granted PNM a rate increase of $34.4 million.  PRC rejected PNM's request for the decommissioning cost increase and the amortization changes, stating that the 2003 Stipulated Agreement contained a cap that prevents PNM from recovering more than $100 million in decommissioning costs.

{6}    PNM filed a motion for rehearing with PRC, which was refused on May 29, 2008, as a result of PRC's failure to act within twenty days.  *See* NMSA 1978, § 62-10-16 (1953) ("[A] failure by the commission to act upon such application within that period shall be deemed a refusal thereof.").  PNM then filed a Notice of Appeal on June 27, 2008, urging this Court to vacate PRC's Final Order.  Initially, PNM had included a second issue in its appeal; however, that matter was settled prior to oral arguments.

**DISCUSSION**

**Standard of Review**

{7}     On appeal of an administrative order, the appealing party bears the burden of showing that the order is unlawful or unreasonable.  NMSA 1978, § 62-11-4 (1993).  We have held that an order may be unlawful or unreasonable when the decision was "arbitrary and capricious, not supported by substantial evidence, or is an abuse of discretion by being outside the scope of the agency's authority, clear error, or violative of due process."  *In re Zia Natural Gas Co.*, 2000-NMSC-011, ¶ 4, 128 N.M. 728, 998 P.2d 564.  In highly technical matters, such as utility rate determination, an agency's decision is accorded "considerable deference." *El Vadito de los Cerrillos Water Ass'n v. N.M. Pub. Serv. Comm'n*, 115 N.M. 784, 787, 858 P.2d 1263, 1266 (1993).  We view the evidence in the light most favorable to PRC's decision. *In re Zia Natural Gas Co.*, 2000-NMSC-011, ¶ 4.

{8}     By statute, PRC is granted broad and exclusive authority to regulate rates for public utilities.  NMSA 1978, § 62-6-4(A) (2003) ("The commission shall have general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations and in respect to its securities . . . and to do all things necessary and convenient in the exercise of its power and jurisdiction.").  PRC is afforded considerable discretion in determining whether rates are just and reasonable. *In re Otero County Elec. Coop.*, 108 N.M. 462, 464, 774 P.2d

5

1050, 1052 (1989).

{9}    PNM argues, however, that the issue on appeal is really one of contractual interpretation—whether PRC correctly interpreted the language in the Stipulated Agreement—and should be reviewed de novo. It is well settled in New Mexico that the question of whether an *ambiguity* is present in a contract is a question of law, reviewed de novo. *Env't Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 14, 131 N.M. 450, 38 P.3d 891.[1]   Without stating that the Stipulated Agreement is ambiguous, PNM argues that the language in the Agreement was not intended to be a cap, and that PRC's contrary interpretation will result in an unintended waiver of PNM's right to seek full recovery of its costs in violation of due process. Ostensibly then, PNM asserts that PRC's Final Order represents, in part, PRC's interpretation of an ambiguous contract.

{10}    We agree that the initial determination of whether a stipulated agreement is ambiguous is a question of law, regardless of whether that determination is made by a trial court or an administrative body. Accordingly, this Court will apply a de novo standard of review to that limited question. However, we do not propose to otherwise

---

[1]PNM also references New Mexico precedent addressing the standard of review in general contract law cases. *See Alldredge v. Alldredge*, 20 N.M. 472, 151 P. 311 (1915) (divorce case in which a stipulated agreement drafted by the husband's attorney was challenged by the wife, who had signed it without the benefit of counsel); *Mark V., Inc. v. Mellekas*, 114 N.M. 778, 781-82, 845 P.2d 1232, 1235-36 (1993) (contractual dispute between a real estate agency and a broker over a commission); *Schaefer v. Hinkle*, 93 N.M. 129, 131, 597 P.2d 314, 316 (1979).

open the door for de novo challenges to administrative decisions under the guise of applying contract law.

{11}    Applying a de novo standard of review to the threshold question of whether the Stipulated Agreement is ambiguous, we agree with PNM that paragraph 13 *is* ambiguous because it is reasonably and fairly susceptible of different constructions. *Env't Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 14, 131 N.M. 450, 38 P.3d 891.  That does not end our inquiry, however.  "Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact." *Mark V., Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235(1993).  Therefore, when an administrative agency, in its adjudicative capacity, makes findings of fact as to the meaning of an ambiguous contract term, we apply "a whole record review to determine if the agency's factual determination is supported by substantial evidence." *Morningstar Water Users Ass'n. v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995).  In performing a whole record review, we may not "substitute [our] judgment for that of the administrative agency," and we view "all evidence, favorable and unfavorable, ... in the light most favorable to the agency's decision." *Tallman v. Arkansas Best Freight*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct. App. 1988).

**Substantial Evidence**

{12}     Coal mine decommissioning costs were but one of numerous rate issues addressed in the 2003 Stipulated Agreement.  PNM does not challenge the Stipulated Agreement as a whole, but rather, challenges PRC's conclusion that the Stipulation contains a cap that prevents PNM from recovering decommissioning costs in excess of $100 million.  PRC's Final Order is accorded considerable deference, and we confine our review to the question of whether PRC's interpretation of the Stipulated Agreement is supported by substantial evidence.  Substantial evidence is  such that "a reasonable mind might accept as adequate to support a conclusion." *N. M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 104 N.M. 565, 570, 725 P.2d 244, 249 (1986).  On review, this Court will not re-weigh the evidence. *In re Otero County Elec. Coop.*, 108 N.M. at 464, 774 P.2d at 1052.  On appeal, PNM bears the burden of showing that the order is unlawful or unreasonable.  Section 62-11-4.  If this Court finds a part of the order unreasonable or unlawful, it must annul the entire order if the end result of the Final Order is unreasonable or unlawful.  NMSA 1978, § 62-11-5 (1993); *In re Petition of PNM Gas Servs.*, 2000-NMSC-012, ¶ 10, 129 N.M. 1, 1 P.3d 383.

{13}     At issue in this appeal is whether substantial evidence supports PRC's conclusion that language in paragraph 13 of the stipulated agreement, authorizing PNM to "recover *up to* $100 million of the costs" for decommissioning, acts as a cap

8

on the amount of decommissioning costs that PNM can recover. PNM argues that the language should be interpreted to allow PNM to recover "up to" $100 million without challenge, but not as a waiver of PNM's right to seek recovery for additional costs in excess of $100 million in a future rate case.

{14} In support of its own interpretation, PNM states that the language of the document as a whole must be considered. PNM points out that in paragraph 12 of the Stipulated Agreement—immediately preceding the challenged paragraph—the parties had expressly used the specific phrase "waived its rights to seek recovery." PNM argues that if had intended to waive its rights to seek recovery for additional decommissioning costs in the future, it would have used similarly specific language in paragraph 13. PNM contends that construing the language in paragraph 13 as a cap would render it inconsistent with paragraph 12. In addition, PNM argues that if "up to" was meant to be a cap, PNM would not have been required to make annual filings of cost estimates, rather than simply reporting the actual amounts spent until $100 million was reached.

{15} However, "although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). Therefore, we look to the evidence relied upon by PRC in support of its conclusion that the Stipulated Agreement limited PNM's recovery at $100 million.

{16}     The Agreement was extensively reviewed and negotiated as part of a previous rate case that included a review by a Commission Hearing Examiner after a full hearing, followed by approval of the Commission, in addition to the hearing process afforded as part of the most recent Final Order.  PRC notes that it authorized recovery at this set price, which was full recovery of the New Mexico jurisdictional share of the total costs estimated at the time of the Agreement.  PRC also cites testimony in support of the Final Order and the Stipulated Agreement, including statements by the New Mexico Attorney General and various municipalities in opposition to PNM, as well as testimony from PNM representatives who referred to the $100 million provision as a "cap."  In addition, PRC notes that PNM was assured a significant tax break when the Commission approved the $100 million recovery.  PRC states that the language of the Stipulated Agreement used the term "*future* retail rates," which clearly capped the amount then and into the future.  Also, the certification of the Stipulated Agreement Case No. 3137 states that these are final costs.

{17}     PNM does not dispute that evidence.  Instead, PNM argues that PRC incorrectly interpreted paragraph 13 as a waiver.  As we stated, however, the role of this Court is not to re-weigh evidence, but rather to evaluate the evidence in the record as a whole to determine if a reasonable mind could accept PRC's conclusion.  PNM bears the burden of overcoming that conclusion.  Because PRC can point to evidence in the record, including statements by both PNM and PRC representatives supporting

10

paragraph 13 as a cap, then a reasonable mind might accept that conclusion as supported by adequate, substantial evidence. While the term "waiver" might have made the provision clearer, lack of the term does not preclude a reasonable mind from drawing the conclusion that the provision can be interpreted as a cap. Therefore, PRC's Final Order should stand because it is supported by substantial evidence.

**Due Process**

{18}    PNM argues that its coal mine decommissioning expense is a necessary cost of doing business, and that its right to recover the full value of such costs is protected by due process of law and the prohibition against taking property without just compensation. Although PNM acknowledges that it can relinquish its right to seek full recovery of its decommissioning costs, it argues that such a waiver must be express and unequivocal. PNM states that the Stipulated Agreement does not contain an unequivocal waiver of its rights, and therefore to interpret the Stipulated Agreement as a cap would unconstitutionally waive PNM's right to seek the recovery of its actual costs and amount to a taking.

{19}    Case law establishes that due process is a flexible concept, the essence of which is the right to be heard at a meaningful time and in a meaningful manner. *N. M. Indus. Energy Consumers*, 104 N.M. at 568, 725 P.2d at 247. In the public utility context, the New Mexico Legislature has set forth an evidentiary hearing process that the agency must follow in all rate-setting matters. NMSA 1978, §§ 62-10-1 to -16 (1941,

11

as amended, repealing §§ 62-10-7, -15). When this process is followed, the necessary elements of procedural due process are satisfied.

{20} In this case, PRC does not challenge the legitimacy of PNM's coal decommissioning costs. Rather, PRC argues that those costs approved as a rate increase are regulated by the Commission and were already subjected to extensive review following statutory protocol that included an evidentiary hearing. PNM does not challenge the validity of the review process. Therefore, we find no basis to overturn PRC's Final Order on procedural due process grounds.

{21} Whether PRC's denial of PNM's requested rate increase results in an unconstitutional taking is a separate question. As our Court of Appeals observed, "the Legislature has substituted a legislatively prescribed method for setting prices in place of the market forces that otherwise would determine the prices a business may charge consumers. In the rate-making context, [rate-making] has constitutional implications: due process of law requires that rates be set high enough to allow investors the opportunity to recover a return on their investment over and above the enterprise's costs of operation." *Bishop v. Evangelical Lutheran Good Samaritan Soc'y*, 2008-NMCA-033, ¶ 9, 143 N.M. 640, 179 P.3d 1248. PRC is charged with the responsibility to "ensure that rates are neither unreasonably high so as to unjustly burden ratepayers with excessive rates nor unreasonably low so as to constitute a taking of property without just compensation or a violation of due process by

12

preventing the utility from earning a reasonable rate of return on its investment." *In re Petition of PNM Gas Servs.*, 2000-NMSC-012, ¶ 8. Reasonableness is also "the test for determining the point at which a rate has become unconstitutionally confiscatory." *Behles v. N.M. Pub. Serv. Comm'n*, 114 N.M. 154, 161, 836 P.2d 73, 80 (1992) (holding that the Commission did not violate the water company's right to due process by denying the rate increase).

{22} To set a just and reasonable rate, the Commission must balance the interests of the investor and ratepayer. *Id.* The commission is afforded considerable discretion in determining whether rates are just and reasonable. *In re Otero County Elec. Coop.*, 108 N.M. at 464, 774 P.2d at 1052. The appealing party bears the burden of showing a commission decision is unreasonable or unlawful. Section 62-11-4 (1965).

{23} In this case, PNM does not challenge that the rates set by PRC were unreasonable; rather, PNM argues that it did not intend to limit the amount of decommissioning costs that it could recover in the future. However, for the reasons stated above, we conclude that substantial evidence supports the PRC's finding that paragraph 13 of the Stipulated Agreement caps the amount of decommissioning costs that PNM may recover. Under the totality of the facts and circumstances, the PRC's Final Order falls within that "zone of reasonableness;" it is not a confiscation of PNM's property interest.

**CONCLUSION**

13

{24}   We affirm the Final Order of the PRC.

{25}   **IT IS SO ORDERED.**


_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**


_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**CHARLES W. DANIELS, Justice**

14